M'KINNEY's Executors v. M'KINNEY's Administrators.

In an action by executors, the plaintiff offered the deposition of a witness, who was shewn to be a son-in-law to the testator: Held, that he was an incompetent witness; though there was no further proof as to his interest.

THIS was an action of detinue, brought in the Circuit Court of Tuscaloosa county, in 1822, by John M'Kinney,

3

JULY 1829.

M'Kinney's
Executors
v.
M'Kinney's
Admrs.

his lifetime, against Sarah M'Kinney as the administratrix of Alfred M'Kinney, deceased, to recover two slaves. During the pendency of the suit, the plaintiff died, and the cause was revived by his executors; and also the defendant having intermarried, her husband was made a party defendant.

At the March term, 1827, the issue was tried by a jury, and a verdict was found for the defendants. The plaintiffs took a bill of exceptions, certifying, that on the trial, they offered the deposition of one Thomas Smith, a material witness for them; but the Court considering that said witness was a son-in-law of John M'Kinney, the plaintiff's testator, rejected his testimony as incompetent and inadmissible, unless the plaintiffs who offered the deposition, would first shew in evidence that he was not interested. There was no other evidence of his having any interest in the cause except that he was a son-in-law to the said John M'Kinney, and that he deposed after his death. It further appeared that the said testator lived and died a resident citizen of Virginia, and that at the time of his death, the property in dispute was in Tuscaloosa.

The plaintiffs here assign for error, that the said deposition was improperly rejected, and that it should have been read, as it was not shewn that the witness was interested.

BARTON and STEWART, for the plaintiffs. There was no other objection to the deposition but that of the deponent being son-in-law to the deceased, whose executors were plaintiffs; and this was certainly an insufficient objection in itself, to reject him as an incompetent witness. It must be admitted, that all witnesses are *prima facie* competent; and they will be presumed to be so, unless some disqualifying objection is shewn; and as all the presumptions of the law are in favor of the admissibility, the objection must be shewn, not presumptively or loosely, but positively and with certainty.[a]

The *kindred* or *connexion* of the witness to the deceased or to his heirs, constitutes of itself no objection whatever to his competency.[b] The only objection then must be on the ground of interest. Then what is the rule in relation to interest? To be disqualified, a witness must have an immediate, legal, present, certain and direct interest in the event of the suit.[c] This is uncontrovertibly the kind of interest necessary to be shewn. The next inquiry is, in what manner must the objection be shewn? It is not sufficient to shew that the witness may or *may not* be inter-

*a* 3 Stark. Evidence 1728.
2 Ib. 392.

*b* 1 Stark. Evidence 84, 85.
Gil. on Ev.
135, marg.

*c* 3 Stark. Ev.
1728–9.
2 Ib. 744–5,
756-8-9.
4D.&East17
1 Stark. Evidence 88.
Bayards Evidence 100.

JULY 1820.

M'Kinney's
Executors.
v.
M'Kinney's
Admrs.

~sted in the event of the suit, for this is not establishing the objection; the fact must appear with certainty, that he *is* interested.    Here there is but a presumption shewn, and the fact of interest is not reached.    It is a well established rule, according to the authorities, that notwithstanding a *prima facie appearance* of interest, that yet the witness should not be rejected without an examination as to his real interest and situation [a]  And it is further laid down, that great strictness and caution are necessary to be observed in rejecting a witness;[b] and that even in cases where it is doubtful if the witness be competent or not, it is more safe to admit the witness than to reject him, and to let the objection go to his credibility;[c] certainly this is the most safe rule, and more likely to reach the justice of the case.    Courts have, in modern times, leaned much in favor of the admissibility of objectionable witnesses; and have felt more disposed than formerly to refer the objection to the jury to judge of from all the circumstances which can effect their credibility; and this doctrine is particularly applicable to this country, where the Courts are careful to exercise as little control over the jury and facts of a cause as possible, whereas in England they rule the jury, and in fact often direct a nonsuit, or direct the jury what verdict they must give.    The question simply resolves itself into this, is a plaintiff, who offers a witness, bound to shew and prove that he is competent, or is it the duty of the party who makes the objection to shew and establish that objection?    It is clear that the disqualifying objection must be proved by the party who makes it. [d]    Then it is equally clear that to shew that Smith *may* or perchance *might* receive some benefit from the result of the trial, is not sufficient; he must shew that he *will*.    What is the extent of the information afforded to the Court in this case? he is a son-in-law; but how stand the accounts? is the estate solvent? is not the contest for the benefit of creditors exclusively? has he not already received his portion of the estate as advancement? has he not received a special legacy by the will; and is not the property in dispute specially given to some one else? or is he not entirely excluded by the will?    All those and many others, are questions as to which the Court is entirely in the dark; yet the fact of his interest depends on this being shewn; and it devolves on the defendants to shew that he is absolutely interested.

Another objection is this; it does not appear by the record that the fact relied on to defeat the evidence was

*a* 3 Stark. Ev.
1734, marg.
2 Stark. Ev.
716--17-
Bay. Ev. 27.
*b* 14 John. Rep
182, 82.
13 John. R 82.
*c* 1 Stark. Ev.
88.

*d* 2 Stark. 757,
note.

JULY 1820.

M<sup>c</sup> inney's
Executors
v.
M'Kinney's
Admrs.

a 3 Stark. Ev.
1734,

proved by the *defendants;* had the objection been made by them, another question on the part of the plaintiff to the witness, might have sufficed to prove that he had in fact no interest at all: but no objection is made, and the fact of his being a son-in-law is only gathered from the tenor of the deposition. This surprises the plaintiffs; and it is the rule, that in taking evidence by deposition, surprise is never tolerated nor permitted.[a] The evidence being taken by deposition, shews the witness was out of the State, and in fact all the plaintiff's evidence comes from Virginia. The defendants should have been required before they could sustain the objection made by them as to interest, to have asked the witness as to his real situation in interest, to have shewn it by other means, or at least to have made the objection when the witness was examined, so that the plaintiffs might have themselves asked the question and avoided the surprise. At all events, it is now more safe for this Court to reverse and remand, in the absence of all knowledge, whether the witness be really interested or not, than to affirm and render the verdict irrevocable, be it right or wrong, of which the Court certainly must be in doubt at least.

SHORTRIDGE and ELLIS, for the defendants.

By JUDGE WHITE. The only question insisted on in argument in this case is, that the Court below erred in rejecting the deposition of one Thomas Smith, taken for the plaintiff, on the ground that said witness was the son-in-law of the plaintiff's testator. In support of this position, it is urged that Smith, notwithstanding he was a son-in-law, might have had no real interest that would have rendered him incompetent; and that the defendant should have made a further shewing. Courts, in modern times, have leaned much against the rejection of witnesses; but it is a well settled rule that when they are directly interested in the event of a suit, or in the record as evidence, they must be excluded. In the present case, Smith's testimony must be viewed as tending to create or increase a fund, as part of the estate of his father-in-law, in which he might have been interested; and this was the reasonable presumption till the contrary appeared. True, it was not certainly the case; he might have been advanced to his full portion of the estate on his marriage; the will might have disposed of the whole,

Without leaving him any thing, and if any thing was left him, he might have released his interest. But if this was so, the plaintiff who expected to be benefitted by his testimony, should have been prepared to have shewn it. Could his competency be restored by a release, it was for the plaintiff to procure it; was he advanced on marriage, or disinherited by will; it is manifest, the plaintiff, who was the executor of his father-in-law, and had the possession of the will, could have produced it with more convenience, and more in accordance with the rules of evidence than the defendant, who, if required to shew such facts, would have had to have shewn the most, if not all of them, by negative proof. Again, we must proceed on general principles, and as defendants could not usually in such cases know of the intention to introduce the witness till the trial, if called on for a stronger shewing of interest than was required in the present case, they would be surprised, or compelled to rely on the *voir dire* of the witness himself, which would often be an unsafe resort. The fact of the testators dying in Virginia, does not vary the aspect of this question. It is so universally true, throughout the States of the Union, that children are all concerned in the distribution of estates, that we conceive the Circuit Court were right in permitting it to have the influence it had on their decision; and that Smith was to be presumed interested till the contrary was shewn. *

Judgment affirmed. *a*

<div style="text-align:right">

JULY 1829.

M'Kinney's
Executors
v.
M'Kinney's
Admrs.

</div>

<div style="text-align:right">

*a* See Strong's
Exr. v. Finch
Minor's Ala.
Rep. 256.

</div>

---

<div style="text-align:right">

2s 21
96 522

---

*Note. This cause was at July Term, 1828, affirmed on argument; and the Court having consented to reconsider the cause, it was re-argued at this term, and again affirmed.