## TATUM, ET AL. V. MANNING.

1. In an action of trover against the purchaser from one who is dead, his widow and son are competent witnesses for the defendant, it being shown that the estate of their relation is insolvent.

2. When a father was one of the distributees of an estate, of which no administration was taken, and received, as his distributive share, by agreement with the other distributees, the services of a slave until his son came to the age of 21, and the residue of interest in the slave was given by the distributees to the son, when of that age, in consequence of the intentions of the intestate to give him the slave—Held, that a purchaser from the father was not protected against the title of the son, by the statute of frauds, although the father had remained in possession of the slave for more than three years. The conveyance to the father is for a valuable consideration, and therefore the remainder is within the exception of the statute.

3. In trover for slaves, the measure of damages is the value of the slaves, at the time of conversion, or at any time between that and the time of the trial.

Error to the Circuit Court of Chambers.

TROVER, by Manning against Tatum and Manifee, to recover the value of a slave alledged to have been converted by him. The plaintiffs in error were made parties to the suit,

Tatum, et al. v. Manning.

as the personal representatives of Menifee, he having died during its progress.

At the trial, the plaintiffs gave evidence conducing to prove that the slave was originally the property of John Spalding, who was without children, and had frequently expressed the intention to give one slave to his nephew, the plaintiff. Spalding, on his death bed, called a witness, and said his wish was, the plaintiff should have the slave which is the subject of the suit. The evidence further conduced to prove, that after Spalding's death, the distributees of his estate met, and agreed to a division without any administration upon it. The share of each was small—less than a slave. Mark Manning, the father of the plaintiff, and a distributee in right of his wife, of Spalding's estate, took the slave, which is the subject of the suit, under a stipulation to deliver it to the plaintiff, when he should reach the age of 21. In the meantime, the father was to take the services of the slave, and he got nothing more than these services for his share—unless some money, which was uncertain. The facts and stipulations of the division were reduced to writing, and signed by each of Spalding's distributees, but this was not produced. It did not distinctly appear, whether the father took the slave as the property of the son, with the right to have its services until the son became of age, the services to constitute his distributive share; or whether he took the slave as his own, under a promise to deliver it to the son when he should come of age. Menifee purchased the slave in 1830, from Mark Manning, for a fair price, and received from him a bill of sale.

The defendant then offered to read the depositions of Margaret Manning, the wife of Mark, and mother of the plaintiff; also, the deposition of Wm. Manning, a son of the said Mark. These depositions were ruled out, because the witnesses were the heirs of Mark Manning, whose bill of sale was a warranty to the defendant. Evidence was then offered by the defendant to prove, that he died insolvent, but the court, notwithstanding, refused to admit the depositions.

The court charged the jury, that if Spalding, on his death bed, declared his wish that the plaintiff should have the slave, though the same never had been reduced to writing, and if,

to give effect to it, the distributees stipulated with Mark Manning, that he should take the slave as the property of his son, use it until his son came of age, free of account, and then deliver it to his son, they should find for the plaintiff, notwithstanding Menifee may have purchased for a fair price, without notiee.    Also, that if the verdict was for the plaintiff, hire might be given for the slave, from the time plaintiff came of age, (which was in 1835,) up to the trial, notwithstanding ing the demand was made in 1842.

The defendants excepted to these several rulings of the court, and they are here assigned as error.

B. F. GOODMAN, for the plaintiffs in error, insisted—
1.  That the depositions of the witnesses ought to have been admitted.    [McKinney v. McKinney, 2 Stew. 17 ; Harrel v. Floyd, 3 Ala. Rep. 18.]
2.  Mark Manning, the vendor of the plaintiff in error, having been in possession of the slave for three years, must be presumed, in favor of creditors and purchasers, to be the actual owner, no reservation in another, or limitation of his interest having been declared in the terms of the statute. [Sewall v. Gliddon, 1 Ala. Rep. N. S. 52 ; Myers v. Peek, 2 Ib. 648 ; Oden v. Stubblefield, 4 Ib. 40.]
3.  The measure of damages in trover, is the value of the property and interest upon it, from the time of conversion. [White v. Martin, 1 Porter, 215.]    As to what constitutes a conversion, he referred to Glaze v. McMillion, 7 Porter, 279 ; Gray v. Crocheron, 8 Ib. 191.]

BAUGH, for the defendant in error, contended—
1.  The witnesses being the heirs of Mark Manning, the vendor of the defendant, were competent to support his title, because if that was insufficient to protect the party, the assets to which as heirs they would be entitled would be subject to respond to his vendee when the warranty failed.    The record in this suit would be evidence in one against the administrator of Manning to show an eviction. [Cowen & Hill's Notes, 1539.]
2.  It is not material to inquire whether the gift by Spalding to the plaintiff could have been sustained as such, in

strict law.   It is sufficient that those interested in this question, admitted his right, and under that right delivered the property to the father.   The delivery to him was a delivery to the plaintiff.   [Sewall v. Glidden, 1 Ala. Rep. N. S. 52.]

3. It is true, the general rule is, that in trover, the value at the time of conversion, or at any subsequent period, is the measure of damages, (2 Leigh's N. P. 15,) but when slaves are the subject of the suit, it is their value, and that of their labor.    [1. N. & McC. 221;  Buford v. Fannin, 1 Bay, 273.]

GOLDTHWAITE, J.—1. There is some conflict of decision upon the first point made in this cause ; both as to the rule itself, and its application to particular cases.   [See Cowen & Hill's Notes, 1539.]   With us, however, in McKinney v. McKinney, 2 Stewart, 17, a distributee is held incompetent, *prima facie*, to testify in behalf of the personal representative ; yet, in that case, it is conceded, such a witness may be sworn, when it is shown affirmatively, that he has no actual interest in the estate.   Without stopping to inquire whether the same rule governs the witness, when the personal representative is not a party to the suit, but may be charged by reason of it, we remark, that here the exception shows the *prima facie* intendment of interest was rebutted by proof that the estate was insolvent.   It being thus shown, that there was no fund to distribute, the apparent interest of the witnesses was disproved, and, in our judgment, their depositions should have been allowed to go to the jury, in this aspect of the proof.   See Cowen & Hill's Notes, 1541, 114 to 119, where many cases to this effect are collected.

2. The next is a more important question, as it requires the examination of our statute of frauds, in a view which hitherto has not arisen.   The cases of Myers v. Peek, 2 Ala. R. 648, and Oden v. Stubblefield, 4 Ib. 40, establish that a reservation by the grantor, or donor, is void, under the statute, when the precedent estate is not supported by a valuable consideration, and the first taker has continued in possession for more than three years.   On the other hand, those of The Bank v. Croft, 6 Ala. R, 622, and Johnson v. The Bank, 7

Ib. 379, settle, that a conveyance of property, *bona fide*, for a valuable consideration, although for a determinate ·period, which is extended for more than three years, furnishes nothing for the· operation of the statute. It is unimportant to quote the statute here, as it is set out in terms in the case first referred to, but it may be proper to remark, that one of its chief objects seems to be to cut off all reservations, limitations, remainders and conditions annexed to personal property, voluntarily conveyed by the grantor, and in which a present interest in possession is vested in some individual, unless the deed is registered in a particular manner. The precise question then is, does the conveyance of the slave to Manning, the father, come within the letter or spirit of the statute? It is evident enough, that the title of the son arises out of the donation to him; and it seems equally clear that the slave is to to be considered as a donation from the distributees of Spalding, rather than from Spalding himself, inasmuch ·as the intention of the latter was never consummated, or efficiently declared in· his lifetime. The title to the slave .devolved upon whomsoever might be appointed as his personal representative, and the rights of all parties may be considered, as they would be if the personal representative, acting under the instructions of the distributees, had conveyed the slave to Manning, the father, until his son should attain the age. of 21, with remainder to the son after that period. This conveyance, so far as the elder Manning was concerned, would be sustained by a valuable consideration; that is, the slave for this determinate period, was conveyed in consideration of the distributive share to which he was entitled. The precedent estate in the slave being supported by a valuable consideration, and being *bona fide*, would sustain a reversion to the, grantor, within the principles established in the cases of Croft and Johnson, previously cited, and it therefore becomes unimportant to consider, so far as the construction of the statute is in view, how that reversion is afterwards disposed of. The circumstance, that instead of· reserving the remaining interest in the· slave, to the distributees, that is given by them at the same time to the son, is the one which· creates all the difficulty here; but, in our judgment, it is the same in legal effect, and in its consequences,

Tatum, et al. v. Manning.

as if the remaining interest in the slave had been reserved to the distributees themselves. We come to the conclusion, there was no error in this regard, in the charge to the jury.

3. The measure of damages, in an action of trover, is the value of the chattel at the time of conversion, or at any time between that and the time of trial. [Steph. N. P. 2711; Greening v. Wilkinson, 1 C. & P. 625.] The precise question, we believe, has not distinctly arisen in this Court, though the rule as stated, seems to be conceded. In White v. Martin, 1 Porter, 215, and in Strong v. Strong, 6 Ala. Rep. 345, it is said, the plaintiff may always avoid the difficulty of assessing the value by bringing detinue. In South Carolina, the rule with respect to slaves is so modified, as to allow the value of their labor to be recovered in addition to their value. [Banks v. Hatton, 1 N. & McC. 221.] But we are not aware of any reasons applicable to slaves, which may not be applied to all other chattels capable of use. We think the harmony of decision is better sustained by recognizing the same rules as governing all descriptions of chattels. Indeed, it is evident, that the defendant to an action may not have realized the value of the hire, from slaves which he honestly supposed to belong to himself. Independent of such considerations, however, our opinion is, that the reason given in Strong v. Strong, applies equally here, and that the action of detinue should have been selected, if damages for the detention of the slave, was in part the object of the suit. As the charge with respect to the measure of damages is different from that which the law gives, there is error also in this particular.

For the causes we have noticed, the judgment is reversed, and the cause remanded.