## EWING vs. BLOUNT.

1. In trover, the measure of damages is the value of the goods at the time of the conversion, or at any time subsequent thereto and before the trial, with interest on such value.

2. But this rule only applies when the property has not been regained by the owner. If the plaintiff has regained the possession, he is only entitled to recover damages equal in value to the use or service of the goods, and also compensation for any injury done to them; and if he is put to necessary and reasonable expense in regaining the possession, (otherwise than by suit at law), he may recover such expenses from the wrong-doer.

[Ligon, J., *dissenting*, held, that if the plaintiff regains the possession pending the suit, and its value when so regained equals its value at the time of conversion, or at any time between its conversion and return, then the defendant is entitled to an abatement of the damages to the extent of this value, and that judgment should only go for the interest.]

ERROR to the Circuit Court of Mobile.
Tried before the Hon. L. Gibbons.

THIS was an action of TROVER, brought by Blount against Ewing, for the conversion of a slave. It was shown that the slave ran away from the plaintiff in January, 1849, and soon afterwards was in the possession of the defendant, who sold him to one Vaughn. It also appeared, that the negro ran away from Vaughn in the year 1850, and was arrested and put in jail in Baldwin county, as a runaway. It was also proved, that the plaintiff came to Mobile, to recover possession of the slave, and did obtain him, and had him in possession at the time of trial. It further appeared, that the plaintiff expended about thirty dollars in regaining the possession of the slave, and that he was worth from eight hundred to one thousand dollars, and his hire by the month from twelve to sixteen dollars.

Upon this evidence, the court instructed the jury, that if they believed the slave was the property of the plaintiff, and that he ran away from him, and afterwards was in possession of the defendant, who sold him without the plaintiff's consent, then the plaintiff was entitled to a verdict; that if the plaintiff had regained the possession of the slave, he could not recover the value of the negro, and this should go in mitiga-

tion of damages; that this was an action sounding in damages, and the plaintiff had a right to recover such damages as would make him whole; that one rule the jury might adopt was, to find the value of the negro at the time of the conversion by the defendant, and before the recapture by the plaintiff, and give him interest on the amount as the measure of damages, if this would make him whole; but they were not limited to this rule; and that though they could not give the plaintiff hire in this suit, as hire, yet they could look at the value of the hire of the slave, from the time that elapsed between the conversion by the defendant and the recapture by the plaintiff, as a fact by which to ascertain the plaintiff's loss, and as a criterion by which to ascertain the plaintiff's damages; and that they might adopt the latter rule, if they thought it proper, or found it necessary in order to do full justice.

The court also charged the jury, that under the circumstances of this case, the plaintiff would be entitled to recover the necessary expenses he had incurred in regaining the possession of his slave.

The defendant requested the court to charge the jury, that the measure of damages was the value of the slave at the time of the conversion, or at any time subsequent thereto and previous to the trial, with interest thereon to the time of trial. This charge the court refused. To the charges given, as well as the refusal to charge as requested, the defendant excepted.

BOYLES, for plaintiff in error, relied on 1 Porter, 215; 6 Ala. Rep. 345; 9 ib. 144; 10 ib. 682.

CAMPBELL, contra, cited 14 Pick. 356; 17 ib. 1; 11 Shep. 339; 21 Wend. 379.

DARGAN, C. J.—The rule is settled by the decisions of this court, that the measure of damages in actions of trover is the value of the goods at the time of the conversion, or at any time subsequent thereto and before the trial, with interest on such value. Tatum v. Manning, 9 Ala. Rep. 144; Lee v. Matthews, 10 Ala. Rep. 682.

This rule we think a correct one, and we feel no disposition to depart from it; but it is only applicable to those

cases where the owner had not regained possession of the goods before the trial. Pierce v. Benjamin, 14 Pick. 354; Curtis v. Ward, 20 Conn. If the owner has regained the possession of the goods, he cannot recover their value, and is only entitled to the damages he has sustained by the wrongful deprivation of his possession, and such damages should be commensurate with the injury. If the chattel has been injured, he is entitled to compensation for such injury; and as he has been deprived of the use and service of the chattel, his damages should be commensurate with the value of the use or service, otherwise this action would be inadequate or incapable of doing complete justice. The hire or value of the service of the chattel must, in such cases, be one of the criteria by which the damages are to be ascertained.

The reason of the rule that the value of the goods, with interest, is the measure of damages, where the property has not been restored to the owner, is founded on the idea, that the value of the goods recovered is equal to the goods themselves; and interest on that value is the legal damages resulting from withholding such value. But when the property is returned to the owner, then the foundation for allowing interest is gone; for its value cannot be recovered; and we must then consider the plaintiff as the owner of the property, who has been wrongfully deprived of its use for a time. Consequently, no other rule will do complete justice, than to allow a recovery of damages equal to the loss sustained; and this can only be done by allowing damages equal to the value of the use or service of the property. See Curtis v. Ward, *supra*.

We also think that the plaintiff may retake his goods, if he can do so without committing a breach of the peace; and having this right, if he is put to expense, *necessary and reasonable*, to regain possession, (otherwise than by suit at law), he may recover such expenses from the wrong-doer; for it was his wrongful act that induced the expenditure of the money, and there is no injustice in holding him liable for it. This rule is sanctioned in the case of Greenfield Bank v. Leavitt, 17 Pick. 1; and I think it a correct one. Indeed, the general rule insisted upon by the plaintiff's counsel, that the value of the property, with interest, is the measure of damages, can never apply, save in those cases where the owner

*has not* regained the possession of the property converted. If he has regained the possession, then all the authorities agree, that the value of the property so regained shall go in mitigation of damages only, and not in bar of the suit; and in such cases we cannot look to the value of the property, as the measure of damages; *for the property the plaintiff has,* and has only been deprived, for a time, of its use; we must therefore compensate him for this deprivation of its use, which can be done only by giving him damages equal to the use or service, together with such reasonable expenses as he may have borne, in obtaining the possession. This is the only rule that will do complete justice, and it is one I cheerfully adopt. The general rule we have adverted to, that the value of the property, with interest, is the measure of damages, was adopted, because it was considered as coming as near complete justice, in all cases, as a general rule can; but when it cannot apply to a particular case, because the property has been returned to the owner, we then must apply such rules as will do complete justice, if we can; and those we have laid down, in my judgment, approach as near the ends of justice as any that could be applied; and there is certainly nothing in the form of the action that will prevent their application.

In conclusion, we will remark, that from the bill of exceptions it appears, that the defendant was the original wrongdoer. Had it appeared that he was a *bona fide* purchaser from the original wrong-doer, then the case would have been presented in a different aspect, and whether the rules we have laid down would have been applicable to him or not, we decline to express any opinion. And it may also be observed, that the bill of exceptions does not show, that the expenses for regaining the possession of the slave were incurred after the suit was brought, but rather that they were paid before the bringing of the suit; and construing the bill of exceptions most strongly against the party excepting, we are bound to consider the case as if it had appeared that the expenses were incurred before the action was commenced.

The ruling of the court is correct, and the judgment must be affirmed.

CHILTON, J.—When the effect of a recovery in trover is,
44

to change the property, and operate as a sale of the chattel to the defendant, upon the payment of the amount recovered, there is a substantial and an obviously just reason for allowing the value of the chattel, with interest thereon from the time of the conversion, to be the criterion of damages. In such case, the parties waive the tort, and treat the conversion as a sale, to be consummated upon the satisfaction of the recovery. But when the defendant sets up the defence that the property has been returned, then the reason for the above rule ceases, and the rule itself must cease. In such case, there is no change of property, and hence all inquiry as to · its *value* is outside the proper scope of the matter to be ascertained by the jury. To assume that there was a sale; that the defendant agreed to pay the highest value of the property and interest thereon; that the return of the property operated as a sale back to the plaintiff from the time of the return, leaving the defendant the plaintiff's debtor to the amount of the interest accruing in the mean time, is to frame a set of assumptions having no foundation in fact, and serves only as a circuitous and arbitrary mode of ascertaining the damage the plaintiff has sustained by being deprived of the use of his property. I prefer adopting the plain common-sense rule, of compensating the plaintiff in such cases for the actual injury he has sustained by being temporarily deprived of his property. This rule does not militate against any adjudication in this State, and has been recognized by several of the states, in which the rule, as several times announced by this court, obtains. The plaintiff in no case receives hire as hire.

LIGON, J.—Very early in the history of this court, it was held, that upon a recovery, and satisfaction thereof, in an action of trover, the right of plaintiff to the chattel converted, vests in the defendant, as absolutely as if the latter had received it of the former on a contract of bargain and sale. White v. Martin, 1 Por. 215; Spivy v. Morris, 18 Ala. Rep. 254. In the former case it was also held, that the sale was complete from the time of the conversion, if the plaintiff elected to bring trover, and not detinue, for the chattel so converted, and that by bringing the action of trover the plaintiff waived the *tort.* His action then proceeds upon the principle

of a contract between the parties for the sale of the chattel, and an implied agreement on the part of the defendant to pay interest on the purchase money from the time it was due, that is, from the date of the conversion, until the day of recovery, or the time of the judgment. Proceeding upon this view of the rights and liabilities of the parties, this court, in the case of Strong v. Strong, 6 Ala. Rep. 345, held, that in trover, " the measure of damages is the injury actually sustained; therefore, in an action brought for the recovery of a slave, if the plaintiff have but a life estate in the slave, the measure of damages is not the value of the slave, but of the plaintiff's interest in the slave, with interest on that sum." In Tatum v. Manning, 9 Ala. Rep. 144, the question of the measure of damages in an action of trover, was again raised, and the court lays down the rule somewhat broader than it is to be found in Strong v. Strong, but without interfering at all with the principle on which it was rested in the case of White v. Martin, viz: a sale of the chattel; and says, that, "the measure of damages is the value of the slaves at the time of conversion, or *at any time between that and the time of the trial.*" Proceeding in this extension, as I suppose, (for the reason for their conclusion is not very clearly stated,) on the supposition that until the judgment, the defendant would have a right to surrender the chattel, and show such surrender in mitigation of damages; and if he failed to do so, it would show a willingness on his part to take the property at the highest price at which it might be valued at any time during the period when he might surrender it. In the opinion in this case, it is remarked, " that the rule with respect to slaves is so modified in South Carolina, as to allow the value of their labor to be recovered in addition to their value. But we are not aware of any reasons applicable to slaves, which may not be applied to any other chattels capable of use. We think the harmony of decisions is better sustained by recognizing the same rule as governing all descriptions of chattels. Indeed, it is evident, that the defendant in an action may not have realized the value of the hire, from slaves which he honestly supposed belonged to himself." It is plain from the language of the decision above quoted, that in the opinion of the court the hire of the slaves could, in no event, where the defendant

retained possession of them, form an element in measuring the damages.

In Lee v. Matthews, 10 Ala. Rep. 682, the court recognizes the rule as laid down in Strong v. Strong, and with regard to its extension in Tatum v. Manning, without referring to that case at all, Judge Ormond, who delivers the opinion of the court, says: "The value, therefore, of the property at the time of the conversion, with interest thereon to the judgment, is the measure of damages. This is the general rule, though there are certainly cases, where the jury would be justified in finding the value at a subsequent period, instead of the value at the time of the conversion, with interest," and he cites, Greening v. Wilkerson, 1 C. & P. 625; Whitehouse v. Atkinson, 3 ib. 344, which fully sustain his views.

From these decisions, it may now be regarded as the settled law of this State, that in actions of trover, in which the defendant still retains the property, the rule of damages is, the value of the property at the time of the conversion, or at any time between that period and the trial of the cause, with interest on such value from the time of conversion. And when the conversion of slaves is the foundation of the suit, their hire is not to be admitted into the computation.

That this is the result of our decisions on this subject, we all agree, and there is no difference of opinion as to the propriety of permitting the cases to remain untouched.

The case under consideration, I concede, is not fully within the rule established in the cases referred to, but the spirit of that rule when applied to it, leads my mind to a very different conclusion from that attained in the opinion of a majority of the court; and it is, as I conceive, more in harmony with those decisions.

If in a recovery in trover, the measure of damages is founded, as the court says, in White v. Martin, upon the principle of a sale of the property from the plaintiff to the defendant, with the purchase money due at the time of conversion, and such plaintiff is entitled to no more than the value of the property so sold, with legal interest, it is difficult to conceive, by what process it is, that he can recover higher damages. when the whole principal of the debt is paid pending the litigation, than he could have recovered had the defend-

ant withheld the payment; yet such is the result of the opinion of the majority of my brethren. They all hold, that, if the action had proceeded without the slave being returned, interest on his value, with that value itself, would have been the measure of damages; but that since the slave is returned, and his value thus paid, a new rule of ascertaining the damages for the time he was held by the defendant, must be adopted, and the hire of the slave, and not interest on his value, is to be the measure of damages. The plaintiff is thus allowed, by his own act done pending the suit, to change his rights, and by this change to enhance his recovery. It is certainly at his option, to receive the property, or to let it alone, if it is offered to be returned pending the suit. If he takes it back, his damages are increased; if he lets it remain, they are lessened. So that it is in his power, if he can obtain the goods without committing a trespass, to entitle himself to new rights against the defendant, and this, pending the suit in which he seeks redress for the injury done him.

The adoption of such a rule is, in my opinion, wholly at variance with the principle on which our previous decisions have been founded, and should not be allowed; while those cases are permitted to stand.

The return of the property pending the suit, may be shown by the defendant in mitigation of damages. It may be asked, what damages? The answer is, the value of the chattel converted, with interest thereon from the time of conversion; for this is the rule adopted by the courts in actions of trover. So, if the property (a slave, as in this case,) is valued by the jury at eight hundred dollars, and has been detained one year before the trial, the additional damages, by way of interest, are sixty-four dollars, and to render our decisions harmonious, this is the only rule we can adopt. But in the opinion of a majority of my brethren, we should, in such a case, be guided by the rule in South Carolina, which is named, and repudiated by the court in Tatum v. Manning; and adopt the hire of the slave as the measure of damages, in part; and for the remainder, the expenses of the plaintiff in hunting him up, after he had brought his action, thereby electing to consider the slave sold, and with a full knowledge of the measure of his damages as fixed by law. Thus the defendant

enters the litigation with one set of liabilities, and comes out of it with another, without any new wrongful act committed by him while the suit was pending.

The return of the property pending the suit, if its value, when so returned, equals the value when the conversion took place, or at any period between the conversion and the return, should, in my opinion, entitle the defendant, when the damages are assessed under the rule laid down in the cases cited from our own court, to an abatement or mitigation of the sum so found, to the extent of this value, and the judgment should only go for the interest. It is said, however, in the opinion of the majority of the court, that, under the rule which requires that a bill of exceptions should be construed most strongly against the party excepting, it may be inferred from the present bill that the plaintiff below had regained the possession of the slave before the suit was brought, and thus the case would be placed beyond both the letter and spirit of the rule laid down in the cases cited. Let this rule of construction be applied to the record before us, with its utmost stringency, and I do not think such an inference can be legitimately drawn from it. It shows that the writ was issued on the 26th of March, 1850, and by the bill of exceptions we are informed that the slave ran away from the possession of Vaughn, to whom Ewing had sold him after the conversion, "*in the winter of* 1850;" this expression, I apprehend, is generally, if not universally, understood to mean the winter beginning in that year. It is then clear, that the recapture by Blount must have happened pending the suit, and at least eight or nine months after its institution.

I admit, that the cases cited from New York, Massachusetts and Connecticut, sustain the decision of the majority of the court; but I do not see that they harmonize with the principle on which this court has heretofore proceeded, and highly as I regard the source whence those cases proceed, I still prefer conformity to our own decisions, to submission to theirs.