Plaintiffs below claim defendants converted $9143.23, the property of plaintiffs, and further claim punitive damages on the basis that defendants "knowingly and fraudulently" converted plaintiffs' money. The underlying facts of this case are unusual, and the cause of action for conversion of money upon such facts is novel.
The case law of Alabama establishing the essential requisites for the maintenance of a cause of action in conversion has long been *Page 744 
firmly established. There are four different actions which constitute conversion: (1) A wrongful taking; (2) an illegal assumption of ownership; (3) an illegal use or misuse; and (4) a wrongful detention. Only the fourth action requires proof that the plaintiff demanded the return of the converted property and that the defendant refused that return.
 It is believed that all conversions may be divided into four distinct classes.
1. By a wrongful taking;
2. By an illegal assumption of ownership;
 3. By an illegal user or misuser; and 4. by a wrongful detention — Bull.N.P. 44; 2 Saund. 47, E.
 In the first three named classes, there is no necessity for a demand and refusal, as the evidence arising from the acts of the defendants, is sufficient to prove the conversion. In the latter class alone, is such evidence to be required, as the mere detention of a chattel furnishes no evidence of a disposition to convert it to the holder's use, or to divest the true owner of his property.
Glaze v. M'million, 7 Port. 279, 281-82 (1838) (emphasis added). See also, Claybrooke Warehouse and Gin Company v.Farmers Cooperative Warehouse and Gin Company, 260 Ala. 518,71 So.2d 88 (1954).
The building insured by defendant, Royal Globe, burned, and Royal Globe paid the mortgagee bank, as loss payee under the plaintiffs' fire insurance policy, the sum of $9143.23, representing the balance of the indebtedness owed by plaintiffs to the bank. In turn, Royal Globe took an assignment of the bank's note and mortgage, apparently for the reason that Royal Globe denied liability to plaintiffs under the insurance contract. The bank did not satisfy the mortgage of record, having transferred ownership to Royal Globe.
In the federal court action by plaintiffs against defendants on the insurance contract, plaintiffs recovered for their fire loss, and the $9143.23 paid by Royal Globe to mortgagee bank was deducted from the jury verdict against Royal Globe. Until the jury determined that the insurance company's defense on the policy was without merit, the insurance company was entitled to take an assignment of the mortgage from the mortgagee bank, on the theory that if the jury determined Royal Globe was not liable on its policy, Royal Globe would be entitled to some security for the money which it paid on behalf of the plaintiffs to the bank. Therefore, because the "taking" of an assignment of the mortgage by Royal Globe was not wrongful, the only possible category of conversion into which Royal Globe's actions could fall is the fourth category listed above, i.e., wrongful detention.
In the recent case of Tenneco Oil Company v. Clevenger,363 So.2d 316 (Ala.Civ.App. 1978), the Court of Civil Appeals recognized that the statutory penalty for failure of a mortgagee to satisfy a mortgage (Code 1975, § 35-10-30) is penal in nature and therefore not the exclusive remedy to recover damages against a mortgagee. The Court of Civil Appeals held there is a field of operation for a civil cause of action for damages on behalf of a mortgagor based upon the wrongful failure of the mortgagee to satisfy his mortgage.
 Inasmuch as the statute is penal and not remedial, the penalty is not in lieu of compensatory damages suffered by the mortgagor and resulting from the mortgagee's wrongful failure to exonerate. When, as here, the mortgagor pleads and proves damages quite apart from the penalty arising from the fact of failing to discharge the statutory duty to exonerate, the mortgagor is not precluded from asserting other theories to recover his damages.
Tenneco Oil Company v. Clevenger, 363 So.2d 316, 318
(Ala.Civ.App. 1978).
Although the remedy provided by § 35-10-30 is not exclusive, in order to maintain a cause of action in conversion for detention, plaintiffs must prove that they demanded the return of the converted property. See, Glaze v. M'million, supra,Claybrooke Warehouse, supra. There is evidence in the record to the effect that Mr. Raley made several trips to the bank to *Page 745 
obtain information on whether his mortgage had been exonerated or assigned and, if assigned, to whom. "[However,] a demand, to be effective, must be made on the person who has the actual possession or control of the property claimed, who is obligated to surrender it, and who has the power to deliver it up, if he would." 89 C.J.S. Trover and Conversion § 58 (1955). In the instant case, though the Covington County Bank was the mortgagee of record, evidence in the record shows that the mortgage was transferred to Royal Globe, which, as the assignee of the mortgagee, became the true owner of the mortgage. The question determinative of this appeal is whether a sufficient demand was made on Royal Globe for the return of the $9143.23 which the Company took as a credit against the Raleys' judgment, or whether a sufficient demand was made for the return of the mortgage marked "paid."
It is necessary to distinguish the type of demand contemplated in Code 1975, § 35-10-30, the statutory penalty for a mortgagee's wrongful failure to exonerate, from that type of demand essential for the maintenance of a compensatory common law action in conversion for wrongful detention. In order for a mortgagee to be subject to the imposition of the statutory penalty for wrongful failure to exonerate, the mortgagor must have requested in writing the satisfaction of his mortgage. Code 1975, § 35-10-29. The legislature chose the stringent requirement of a written request as a precondition to imposing the statutory penalty, but conversion is not dependent upon statute. "[C]onversion had its real genesis in the old common law action of trover." W. Prosser, Handbook on The Lawof Torts § 15 (4th ed. 1971). A demand need not be in writing to give rise to a compensatory common law cause of action for wrongful detention.
 There is no particular formality required in making a demand for the return of property. Thus, efforts of the plaintiff to remove the property, and acts of the defendant preventing such removal may be sufficient to constitute a demand and refusal.
18 Am.Jur.2d Conversion § 64 (1965).
"No formal words are required to constitute a demand, whether it is oral or in writing, but it should be a request for present delivery of the property, and must be clothed in absolute unequivocal terms." 89 C.J.S. Trover and Conversion § 58 (1955).
The record is replete with evidence, including letters and depositions, which raises a genuine issue of fact whether the Raleys demanded from Royal Globe the return of their mortgage and note marked "paid." It was error for the trial court to enter summary judgment for the defendants when a genuine issue of material fact was raised as to whether or not a sufficient demand was made upon the Royal Globe Insurance Company for surrender of the mortgage marked "paid."
If the factfinder determines that the Raleys did demand that Royal Globe surrender their mortgage marked "paid," then the question of damages arises.
 The rule is settled by the decisions of this court, that the measure of damages in actions of trover is the value of the goods at the time of the conversion, or at any time subsequent thereto and before the trial, with interest on such value.
 This rule we think a correct one, and we feel no disposition to depart from it; but it is only applicable to those cases where the owner had not regained possession of the goods before the trial. If the owner has regained the possession of the goods, he cannot recover their value, and is only entitled to the damages he has sustained by the wrongful deprivation of his possession, and such damages should be commensurate with the injury. If the chattel has been injured, he is entitled to compensation for such injury; and as he has been deprived of the use and service of the chattel, his damages should be commensurate with the value of the use or service, otherwise this action would be inadequate or incapable of doing complete justice. The hire or value of the service of the chattel must, in such cases, *Page 746 
be one of the criteria by which the damages are to be ascertained.
. . . . .
 We also think that the plaintiff may retake his goods, if he can do so without committing a breach of the peace; and having this right, if he is put to expense, necessary and reasonable, to regain possession, (otherwise than by suit at law),[1] he may recover such expenses from the wrongdoer; for it was his wrongful act that induced the expenditure of the money, and there is no injustice in holding him liable for it.
Ewing v. Blount, 20 Ala. 694 (1852) (emphasis added) (citations omitted). See also, Mitchell v. Corbin, 91 Ala. 599,8 So. 810 (1890); Roebuck Auto Sales, Inc. v. Wallace, 293 Ala. 231, 301 So.2d 546 (1974).
Plaintiffs' complaint also seeks punitive damages based on their allegation that Royal Globe "knowingly and fraudulently" converted the $9143.23. "[I]f evidence is presented to the jury which shows that a party has converted property in known violation of the owner's rights and in violation of the law, punitive damages may be assessed." Gunite Contracting Co. Inc.v. Mize, 341 So.2d 694 (Ala. 1977); Roy Hughes Chevrolet, Inc.v. Gordon, 294 Ala. 638, 320 So.2d 652 (1975).
If the plaintiffs can prove no actual losses resulting directly from the mortgagee's wrongful failure to exonerate their mortgage and the plaintiffs can prove no conduct of such a nature which would give rise to exemplary damages, then any award the plaintiffs receive should be limited to nominal damages.
[1] Plaintiff may recover expenses incurred in regaining possession other than attorney's fees. Electric Lighting Co. v.Rust, 131 Ala. 484, 31 So. 486 (1901); 89 C.J.S. Trover andConversion §§ 174, 175 (1955).