# LEE v. MATHEWS.

1. To authorize the proof that a deed was registetsd in another State, by the production of a certified copy, it must appear that by the law of such State, such deeds are required to be recorded.

2. Proof of the law, cannot be made by the deposition of a witness.

3. Where the wife has a separate estate in slaves, and the husband and wife live together, the possession of the husband, is the possession of the wife.

4. One who as agent, intermeddles with the goods of another, is guilty of a conversion, if it would have been such, if his principal had received them; although he was ignorant at the time of the title of the true owner; and may be sued in trover, after he has parted with the possession to his principal.

5. The general rule, as to the proper measure of damages in trover, is the value of the property at the time of the conversion with interest; but in some cases, the jury may be justified in giving the value at a subsequent period. An agent purchasing female slaves, who was ignorant at the time, that the title was not in the vendor, is not liable for the value of children of the females, born after the delivery to his principal, and before demand made, or suit brought.

Writ of Error to the Circuit Court of Clarke.

TROVER, for certain slaves.

From a bill of exceptions it appears, that on the trial, the plaintiffs introduced a copy of a deed of marriage settlement, having first accounted for the non-production of the original. To which the defendant excepted, because the deed was not recorded as required by the law of N. Carolina, and because there was no certificate of the register, showing that the law of N. Carolina had been complied with. The indorsement on the copy is as as follows:

*Halifax County, Feb'y* 6, 1827.

Then this deed of trust, &c. was exhibited in open court, and was duly proved by oath of N. Gee a witness thereto, and on motion ordered to be registered. Test, R. W. EPPES, Clerk.

Pr. M. T. PONTON, P. R.

6th March, 1827.

Lee v. Mathews.

Appended to the copy are the following certificates :
State of North Carolina—Halifax County.

I, Mungo T. Ponton, Public Register for said county of Halifax, in said State, do hereby certify, that the foregoing three pages are a true copy from the records of my office. Given under my hand and private seal, there being no seal of office, this 6th May, 1843.

M. T. PONTON, P. R. (seal.)
State of North Carolina—Halifax County.

I, Rice B. Pierce, Chairman, and presiding Justice of the court of pleas and quarter sessions of said county of Halifax, do hereby certify, that the foregoing attestation of Mungo T. Ponton, is in due form, and by the proper officer. Given under my hand and private seal, there being no seal of office, this 9th May, 1843.

RICE B. PIERCE, Chairman.

Then follows a certificate of James Simmons, calling himself clerk of the court of pleas and quarter sessions, that Rice B. Pierce is duly commissioned and qualified as chairman of the court of pleas and quarter sessions of Halifax county, to which is attached the seal of his office.

The plaintiff then read, against the objection of the defendant the deposition of M. T. Ponton, to prove that he was register of said court, and that the deed was registered according to the law of North Carolina—to which the defendant excepted.

The deed was made upon a contemplated marriage between James R. Battle, and Elizabeth W. Arrington, his intended wife, Elizabeth W. Arrington, the elder, being the trustee in the deed.

The marriage took place, and in 1828, the trustee intermarried with one Wilcox; and Battle and wife, and Wilcox and wife, removed to Alabama, bringing with them the slaves mentioned in the deed ; Battle being insolvent at the marriage, and up to the time he left North Carolina. That Wilcox died, and his wife intermarried with Mathews, the plaintiff, and were living, in 1839, in Mississippi, or Louisiana. That two of the slaves sued for, Beck and Maria, had remained in the possession of Battle, from the time of his removal from North Carolina, until March, 1839, when they were

sold by the sheriff of Sumter, as the property of Battle, and were purchased by one William Lee, at the request of defendant, who acted as the agent of Rebecca Shamberger of Clarke county; she furnishing him with the money which was paid to the sheriff, and the bill of sale taken in the name of Mrs. Shamburger. The slaves were sent by the defendant to Mrs. Shamburger, in whose possession they remained until 1841, and during her possession, two of the slaves sued for were born. The sale was not forbid, and no one set up a claim to them at the sale, nor were they under the control of the defendant, after they went into the possession of Mrs. Shamburger. There was no evidence that the plaintiff's title was made known to the defendant, or any demand made of him, until the property went out of his possession, nor until the 4th April, 1844, and before this suit was brought.

The court charged the jury, that the legal title to the slaves was in the plaintiff, as trustee, when they were levied on, and that the levy of the execution was a trespass. That the taking possession under the purchase from the sheriff, was a continuation of that trespass, and was wrongful, though he was acting for another. That in the case of an original wrongful taking, no evidence of an actual conversion was necessary, but if the possession was not wrongful, the refusal to deliver was evidence of a conversion, although he had parted with the property, when such demand was made. To which the defendant excepted, and moved for the following charges:

1. That the possession of Battle was the possession of the trustee, and she was bound to give notice of the deed before the sale.

2. That if the possession of Battle was consistent with the deed, the levy of the execution divested it out of Battle, and the trustee was bound to give notice, or a purchase without notice, for a valuable consideration, would not be a wrongful taking.

3. That the purchaser at sheriff's sale, without notice of the outstanding title, is not guilty of a wrongful taking.

4. That by the purchase at sheriff's sale, the defendant acquired a color of title, which did not amount to a wrongful

Lee v. Mathews.

taking, or illegal conversion, without which the plaintiff cannot recover.

5. That a possession by Battle of six years, gave the purchaser at the sale without notice, a color of title, which does not amount to a wrongfult aking, or illegal conversion.

6. That if the defendant purchased as agent, without notice of the outstanding title, and immediately delivered the slaves to his principal, before notice of the title of the plaintiff, and before demand, he is not liable.

7. That in such case, the defendant is only liable for the temporary conversion, and not for the whole value of the slaves. These charges were refused, and the defendant excepted.

8. That he is not bound for the slaves born after the delivery to the principal. All these matters are assigned as error.

Hopkins, for the plaintiff in error, made the following points:

1. The copy of the deed was inadmissible in evidence, without proof, that by the laws of North Carolina, such instruments are required to be recorded, and that the recording officer had authority to certify copies. [Mitchell v. Mitchell, 3 S. & P. 81.]

2. The statute law of another State cannot be proved by parol, therefore the deposition of Ponton was incompetent. [Lucas v. The Bank of Georgia, 2 Stew. 147; Wilson v. Walker, 3 Id. 211; Tatum v. Young, 1 Por. 310; Swift v. Fitzhugh, 9 Id. 37; Burt v. Kimball, 5 Id. 137; Wade v. Odeneal, 3 Dev. 423.]

3. That the instructions given, and refused, were wrong, see Paley on Agency, 80, 293, 305; Ex parte Hartopp, 12 Vesey, 351; Smith v. Young, 1 Camp. 441; Buller's N. P. 45.

R. H. Smith, contra, contended, that it was to be inferred from the bill of exceptions, that there was proof before the jury, of the law of North Carolina, and the evidence introduced, was merely to show, that it was recorded within the proper time. [2 Dev. Law Rep. 40; 3 Id. 135.]

The possession of Battle, was the possession of his wife,

and consistent with the deed. Swift v. Fitzhugh, 9 Porter, 39, is in point to show, that in purchasing the slaves at the sale, the defendant was a trespasser. The fact that he was an agent, and ignorant of the title of the plaintiff makes no difference. [Story on Agency, § 309, 313; Paley on A. 391, note 14; 4 M. & S. 259; 1 Dev. 306; 8 Pick. 546.[ These authorities establish this proposition, and also, that it is unimportant that the slaves were delivered to the principal before the action was brought.

The defendant is liable for the value of the children born since the conversion, and after he had delivered the slaves to his principal, because he is responsible for the injury caused by his wrong, and in trover, the jury may find the increased value of the property at the time of the verdict. [3 Cow. 82; 5 Vermont, 181; 1 C. & P. 625; 8 Wend. 508; 1 Porter, 220; 1 Nott & McC. 200; 5 Pick. 185.]

ORMOND, J.—The counsel for the defendant in error contends, that from the manner in which the question is presented, and from the necessary inferences arising from the record, we must presume that the law of North-Carolina was produced in evidence to the jury. To authorize the certified copy of the deed, by the public register of Halifax county, North-Carolina, to be read as evidence, it was necessary to prove by the law of that State, that such instruments were required to be recorded. It would seem probable therefore, from the manner in which the objection is taken, that the statute law of North-Carolina was in evidence, but we cannot indulge in inferences, against the positive statement of the bill of exceptions, that the deposition of Mr. Ponton, was introduced, to prove, that he was register of the court, and that the deed " was registered according to the law of N. Carolina." It may be as stated, that the purpose of introducing this testimony, was to prove, that the deed was registered within the time required by the law of that state ; the reasonable interpretation is, that he proved, that the law required the registration of such instruments.

The slaves being conveyed by the *ante nuptial* contract, to the trustee, for the sole and separate use of the wife, no inference can arise from the fact, that they were in the joint

possession of herself and her husband; such must of necessity be the case, when the husband resides under the same roof with his wife. It appears from the record, that two years after the marriage, Battle removed with his family to Alabama, bringing the slaves with him. We do not understand from the statement in the bill of exceptions, that the slaves remained in his possession from his removal to this state, until the time of the levy, that he held them adversely to the deed. If such had been the fact, it should have been stated. Assuming then, from the silence of the bill of exceptions, that he is living with his wife, his possession will be referred to the deed, and is in law the possession of the wife. The case of Swift v. Fitzhugh, 9 Porter, 71, is in point upon upon this part of the case.

From these considerations, it appears, that the slaves were not subject to sale, as the property of Battle, and it follows, that the purchaser is liable to the trustee, in an action of trover for the value.

It is further argued, that this action cannot be maintained against the present defendant, because in the purchase of the slaves he acted as the agent of Mrs. Shamburgher, disclosed his agency at the time, and took the bill of sale in her name, and did not retain the possession but for a short period as such agent, the slaves having been delivered up to his principal, long before this suit was brought. Our first impression was, that the defendant having acted merely as the agent of another person, and having parted with the possession before he received notice of the title of the plaintiff, was not responsible in this action, but that the suit must be brought against the principal. Subsequent reflection has satisfied us, that we were mistaken, and that the principle upon which we relied, does not govern such cases as this.

The general rule of law, that agents properly authorized, acting for a known principal, without any personal undertaking, are not individually responsible, does not apply to torts, because no one can lawfutly command another to commit a wrong. It is also clear, that every unlawful intermeddling with the goods of another, is a conversion ; and it is no answer to the true owner, that the person so receiving the goods, was ignorant of his title, or that he received them for

the use or benefit of another. The taking, or receiving of them, being a conversion, his subsequent disposition of them, will not exonerate him from liability. It is equally certain. that the title of the true owner cannot be divested, without his consent—the only exception to this rule, being, that of a purchase in *market overt*, which has no application here. These principles, are fully asserted in the cases of Perkins v. Smith, 1 Wilson, 328, and Stephens v. Elwal, 4 Maule & S. 259.

In both these cases, the action was brought against a servant, who had received the goods of a bankrupt for his employer, and had parted with them before the action was brought. In the last cited case, the act of bankruptcy was secret, and the defendant merely received the goods from another agent of the principal, who purchased them after a secret act of bankruptcy, and had transmitted them to his principal in the United States, before any demand was made of him, or he was apprised of the facts of the case; yet he was held liable to the assignee of the bankrupt. *Lord Ellenborough*, in giving the opinion of the court, thus expounds the law : " The only question, is, whether this is a conversion of the cler k, which was undoubtedly so in the master. The clerk acted under an unavoidable ignorance, and for his master's benefit, when he sent the goods to his master ; but nevertheless, his acts may amount to a conversion, for a person is guilty of a conversion, who intermeddles with my property, and disposes of it ; and it is no answer, that he acted under authority from another, who had himself no authority to dispose of it. And the court is governed by the principle of law, and not by the hardship of any particular case."

Allthough therefore this may appear to be a hard case, it is perfectly clear, the defendant in receiving the slaves, was guilty of a conversion, although he was ignorant of the title of the plaintiff, and was acting merely as the agent of another, and consequently liable to be sued in this form of action.

The remaining question is, what is the measure of damages. This question arises in this case, from the fact, that some children were born after the female slaves were handed over to his principal by the defendant. The rule as to damages in trover, is, that the defendant is liable only for the dam-

Lee v. Mathews.

ages actually sustained by the plaintiff from the conversion. [Strong v. Strong, 6 Ala. 345.] The value therefore of the property at the time of the conversion, with interest, thereon to the judgment, is the measure of the damages. This is the general rule, though there are certainly cases, where the jury would be justified in finding the value at a subsequent period, instead of the value at the time of the conversion, with interest. [Greening v. Wilkerson, 1 C. & P. 625; Whitehouse v. Atkinson, 3 Id. 344.]

The increase of these slaves doubtless belongs to the plaintiffs, as an incident of their ownership of the females, but as the children have come into existence, since the delivery by the defendant of the slaves to his principal, we are unable to perceive, on what principle he can be held liable for them. Although the jury have a discretion to give the value of the property converted, at the time of the judgment, the subsequent birth of three children, cannot with any propriety be said to enhance the value of the slaves, actually converted, by the defendant. On the contrary their intrinsic value, was probably diminished by this circumstance. Although, therefore, these children are the property of the plaintiffs, their value cannot be recovered of the defendant, because he has not been guilty of their conversion.

The case of Foster v. Gaston, 6 Pick. 185, relied on by the defendant, determines nothing adverse to the principle here laid down. There, the widow of one deceased, had without authority, leased land, and certain animals, (swine,) belonging to the estate. The increase of these hogs, having been attached by a creditor of the lessee, the court held, the heirs could recover their value from him in trover, upon the ground, that as the lessee did not intend to commit a wrong in taking possession of the hogs, he might be considered as the agent of the heirs to take care of the estate; such being the fact, neither the hogs, or their increase, could be taken for the payment of his debts. It is obvious this case, has no relation to the one at bar. The only point of difficulty in this case, was the rule of law, which gives to one having the right to the possession of inferior animals, a title to the increase during such possession. That difficulty was surmounted, by

considering him as the agent merely of the true owner to pre-
serve them, and of course, the increase, as well as the ani-
mals originally taken possession of, belonged to the principal.

Let the judgment be reversed, and the cause remanded for
further proceedings.