HeNRY Gr. Smith, J.,
delivered the opinion of the Court.
Sifting from this record the few facts essential to exhibit the principle upon which the rights of these parties turn, they are these:
Pope, a planter in Mississippi, employed Armstrong to take charge of his, (Pope’s,) wagon and cotton, on their way to Memphis, and to deliver the cotton to Meacham & Galbreath, merchants at Memphis.
Armstrong took the cotton to Memphis, and in fraud of his duty to Pope, put it into the possession of Taylor, Cole & McLeod, merchants, and employed them to sell it on his, (Armstrong’s,) account, representing to them that he was the owner of the cotton.
Taylor, Cole & McLeod, supposing the cotton to be Armstrong’s, and without any notice that it was not, sold it; and paid the proceeds to Armstrong, who ab *415 sconded with, the money, and has not since been heard from.
Pope brought this action of trover against Taylor, Cole & McLeod, for the conversion of the cotton, and upon the issue of not guilty; and under the instructions of the Court, that upon this state of facts, the defendants were liable to the plaintiff for the value of the cotton, the jury found a verdict against the defendants, and judgment was rendered accordingly.
The counsel of the defendant excepted to the ruling of the Court, and now insists that the law of the case is, or ought to be, that where an agent is entrusted by the owner, with the possession of property of the kind and for the purpose as here, and puts it in the hands of a factor to sell, and the factor sells the same and pays over the proceeds to the agent, and without notice of the fraud of the agent, or of the title of the owner, that in such case the factor is not responsible to the owner in trover for the conversion of the property.
There can be no doubt that the agent in such a case cannot make to an innocent purchaser a title to the cotton, as against the owner; nor can he, (the agent,) cause the title to be put in such purchaser by employing a factor, who follows the business of selling cotton, to make the sale. The agent cannot give to his agent —the factor — anything more effective to such purpose than is possessed by himself. This is elementary law.
The owner of the cotton, in such- case, may follow the cotton, into whosesoever’s hands it has gone, and been sold, or otherwise converted, and recover its value; *416 and it is no defense against tbe action of tbe owner, that tbe party sought to be charged, bought and paid for it in tbe usual course of trade, without notice that bis vendor did not have tbe right of property in tbe cotton, or the power to sell it.
Mere possession alone, does not vest tbe agent with power to give tbe purchaser, however innocent, tbe right of property against tbe owner. Nor is it enough so to do, that tbe owner put tbe agent into tbe possession. Something more must be coupled with such possession, to enable the agent to effect a valid sale to tbe purchaser, against the will or instructions of tbe owner. That something more exists in tbe cases where tbe owner has invested bis agent in possession, with an apparent power to sell, or with tbe title to tbe property, or with tbe customary indicia of title, which purport that tbe title or right of property is in the party having the possession. The obvious justice is, that if the owner has put the agent in possession, and has by acts of any kind held out the agent as having authority to sell, or has given the agent the means of holding himself out as the owner, in such cases the purchaser, who has been thereby misled, and been induced by reason of such apparent authority or indicia of title, to part with his money for the property, without notice of the real fact that the agent has no authority to sell, or that the seller in possession is not the real owner, upon plain principles of natural justice, is entitled to hold the property against the owner. The fault is of the owner, that he has furnished the agent with an apparent power to sell, or with an apparent title which im *417 ports a right to sell. The owner is repelled from recovery, upon the principle of what is usually designated an estoppel in pais: 20 Wend., Saltus vs. Everett; 22 Ib., Hoffman vs. Carow; 10 Ala., 682; 18 Ib., 716; 11 Wend., 80.
A familiar illustration of the apparent power to sell, which will enable the fraudulent agent in possession to confer a good title upon an innocent purchaser, against the instructions or will of the owner, and in fraud of the owner, may be found in the usual dealings between the owners of merchandise and of selling factors. The factor to sell, follows the business or occupation of selling the merchandise of others. In this character he holds himself out to the world. Merchandise put into his hands, is understood by the public as so put into his hands for the purpose of sale, and the public have the right so to presume. The owner of merchandise, putting it into the hands of such a factor, holds the factor out to the public, in respect to such merchandise, as having possession in the way of his occupation, and for the purpose 'if sale or disposition in the ordinary course .of his occupation. Whoever deals with such a factor, in the regular course of his occupation, and in good faith, may rightfully presume that the factor has authority so to deal. And this, upon the principle that the owner has not only given the possession to the factor, but has also bestowed upon him an apparent authority to sell.
A distinction, however, exists, which it may be proper to state, and which will illustrate this doctrine. It was made by this Court many years ago, in the case *418 of Hull vs. Walker. The case was, Goodman & Means were merchants in Memphis, and followed two kinds of business with regard to cotton — one as factors to sell, the. other as storage factors — that is, they received and held cotton for planters on storage for shipment, as was customary at that day, to New Orleans and elsewhere. Hull, a planter in Mississippi, sent his cotton to Goodman & Means, for storage only, until ordered to ship, and not for sale. Being in stress for money, Goodman & Means sold the cotton to Walker, who bought in the usual course of trade, and paid the full value, and without notice of the want of authority of Goodman & Means to sell. Hull brought action of tro-ver against' Walker for the conversion of the cotton to his use. The case came to this Court on appeal, and it was here held, that Walker was liable. The cotton was placed by Hull with Goodman & Means on storage, and for that reason their sale to Walker gave him no title. Had they followred the business only of selling factors, and the cotton been put in their hands by Hull, not for sale, it may be presumed that a sale made by them to Walker, without notice to him of the instructions to them not to sell, would have carried the title to Walker against Hull. And this because, in such case, Hull not only put the cotton in the possession of Goodman & Means, but by so doing held them out to the public as having authority to sell it.
Another class of cases may be mentioned, where an agent, without actual authority to sell, is, nevertheless, able to make a good title to a purchaser, for value, without notice. ■ Cases of this kind are, where *419 the agent has not only possession, but is further clothed with the apparent title, or furnished with the ordinary indicia of title, by the owner. Thus, when upon a shipment of goods, the owner consigns them to his agent, and takes and forwards to the agent a bill of lading, to him as consignee of the goods, such bill of lading indicates, and is evidence of ownership of the goods by the consignee; and, persons buying from such consignee in good faith, and in the usual course of business, and for value, obtain the title against the owner, although the consignee was really, as between himself and the owner, no more than an agent, and without authority to sell. In this latter class, may be placed the cases where an agent having possession of negotiable paper, and by means of the indorsements, or otherwise, on the paper, has the apparent legal title, but without any actual authority from the owner to sell, or dispose of the paper. The agent in such a case, transfers the paper to the purchaser, in good faith, in due course of trade, and for value. Such purchaser having thus the legal title, is allowed to hold the paper against the true owner, although the agent who transferred the paper, did so without authority, and in fraud of the ow'ner. It is not the possession only which enables the agent to make an effective transfer to the purchaser in such case, but it is the possession clothed with the apparent title. • Promissory notes, payable to bearer, bank notes, money, stand on the same rule. The bearer has the apparent title. Thus it is, that not possession alone, but possession coupled with the apparent *420 title, will enable a fradnlent agent to make a good title against the owner, to a purchaser for value, and in good faith.
The general rule in respect to personal property is, that a person cannot transfer to another a higher title, or greater interest than he has himself. But if the owner gives possession to another, a*nd also an apparent authority to sell, or an apparent right of property or title, it will be fraud upon a purchaser from the latter, for the owner to deny to the purchaser, the right of such other to make the sale. Negotiable paper, such as bills of exchange, promissory notes, bank checks, may stand upon another ground, similar to that which applies to real estate, and which protects an innocent purchaser; the legal title coupled with an equal equity.
It may, therefore, be taken to be the settled law, that an agent has not, by virtue of possession merely, the power to give to a purchaser from him, the title against the owner.
Nor is there any sound principle on which to maintain, that the mere possession of an agent, without any authority to sell, actual or apparent, from the owner, and without any apparent title conferred on him by the owner, will enable such agent to confer upon his agent, a power to sell, and defeat the title of the owner. The owner not having given his agent any authority to sell, apparent or actual, and not having clothed him with any title, apparent or actual, it is impossible to impute to the owner any fraud wherefore to repel him of the right to assert his title, *421 or upon which to raise against him, any bar in the nature of an estoppel in pais.
The case Saltus vs. Everett, reported in 20 Wend. Reports, page — , is satisfactory authority for this. That case was, Bridge & Yose, at New Orleans, shipped a quantity of lead from New Orleans to New York, by the brig Dove, of which Collins was master, consigned to Tafts, Everett & Barret, at New York, on account of Everett. The Dove put into Norfolk in distress, and Collins re-shipped the lead upon the schooner, the Dusty Miller, to New York, taking from the master of the Dusty Miller a bill of lading, in which Collins was consignee. Upon the arrival of the lead in New York, Collins ordered the lead to be delivered to Coffin & Cartwright, who afterwards sold it to Saltus. Neither Coffin & Cartwright, nor Saltus, had any notice of Everett’s title. Everett demanded the lead from Saltus, who refused to deliver it up; and thereupon Everett sued Saltus in trover, and had verdict and judgment. The case was thoroughly considered in the Supreme Court of New York, and also in the Court of Errors, and the right of Everett to recover from Saltus, was established. See, also, Williams & Chapin vs. Merle, 11 Wend., 80.
Sales made by fraudulent vendees of personal property, stand on ground somewhat other than, and somewhat similar to, unauthorized sales made by agents. When a sale is procured to be made by the fraud of the vendee, such sale is voidable at the option of the defrauded vendor. If, before the vendor exercises his option, and avoids the sale, the fraudulent vendee sell the *422 goods to a purchaser for value, and in the due course of trade, and without notice of the fraud practiced on the original vendor, such purchaser will obtain a good title against the original vendor. The ground upon which the innocent purchaser is enabled to stand, is, that the original vendor invested his fraudulent vendee with the title or right of property in the goods. Thus the fraudulent vendee, having the title and possession of the goods, comes within the principles before stated in respect of unauthorized sales by agents, an apparent right of property, coupled with possession, and given by the defrauded vendor: Saltus vs. Everett, 20 Wend.; Hoffman vs. Carow, 22 Wend., 284; Anderson vs. Dietriecht, 14 Wend., 31; Morgan vs. Evandale, 5 Sneed, 703; Gage, Dater & Massey vs. Apperson, 2 Head, 669.
In the case in hand, Armstrong, the agent of Pope, put the cotton in the hands of Taylor, Cole & McLeod, to sell for him, and they sold the cotton for him, and paid the money over to him; and all this, innocent of any purpose of wrong to Pope, and without notice that Pope had any interest in the cotton. And counsel for Taylor, Cole & McLeod insists that, upon such state of facts, they are not liable to Pope for the conversion of the cotton. The point is clear of doubt. The relation of Armstrong to Taylor, Cole & McLeod, was that of principal and agent, as between themselves. The act of the principal, which would be a tort as against another, is likewise a tort as against that other where done by the agent at the instance of his principal, and is the tort of the agent. The principa] *423 cannot confer upon tbe agent authority to commit a tort upon the property of another. It matters nothing however innocent in intention the agent may be who commits the tort. The tort does not consist in the intention of the wrong-doer, but in the damage done to the injured party; nor does the liability of the party committing the tort, depend upon his intention, but upon the unauthorized injury done to the party injured: Sto. Agency, s. s., 309, 311, 312.
The case of Lee vs. Matthews, 10 Ala., 682, was: where the defendant, an agent, who had bought for his principal, from one having no authority to sell, the slaves of the plaintiff were held liable to the latter in trover, although the agent had no notice of the title of the plaintiff, and held possession of the slaves for a short time only, and had delivered' the slaves up to his principal long before the action was brought.
Pratt vs. Kelly, 18 Ala., 716, was: where the defendant, as agent of another, sold the slaves of the plaintiff, th3 defendant was held liable in trover, though he sold as agent for another, and had no notice of the plaintiff’s right.
Hoffman vs. Carow, 22 Wend., 284, stands on ground somewhat different from the cases taken from the AÍa-¡ batna Reports. Hoffman was an auctioneer in New York, and in the regular course of his business, received for sale a quantity of merchandise which had been stolen from the owner. Hoffman sold the goods, and paid over the proceeds to the thief, and without any notice that ttey were stolen. Hoffman was held liable for the value *424 to the owner, Carow. The same line of argument was pressed upon the Courts of New York in behalf of Hoffman, as has been urged upon this Court in behalf of Taylor, Cole & McLeod. The argument is drawn from the interest of commerce. To give activity and prosperity to trade, it is said that men engaged in trade should he freed from dangers against which they cannot guard with reasonable vigilance and caution, and that the owners of merchandise should suffer the consequences of their misplaced confidence in the persons to whom they intrust the possession of their property. The Courts of New York, representing and alive to the interests of the trade of their own great commercial emporium, upon the most thorough and exhaustive discussion of the question, came to the conclusion that it would be unwise to depart from the settled rule of common law, in respect to transactions of the kind in controversy. And we are unable. to see good reason why the law of this State should be displaced from the same settled foundations of the common law.
It is proper to mention, that the conclusion reached in this case has been upon the view of the facts given in -the proof, most favorable to the claim of Taylor, Cole & McLeod. Armstrong has been dealt with as if he were the agent of Pope to carry the cotton to Memphis, and as if he ha,d been put in [possession of the cotton by Pope; whereas, it may fairly be taken as the effect of all the proofs, that the cotton was not put in Armstrong’s possession by Pope, and that no authority whatsoever was given to Armstrong by Pope over the cottoi. *425 It has been, however, more convenient to deal with tbe argument of counsel for Taylor, Cole & McLeod, to put their case upon the highest ground assumed by them.
The principles embraced in this opinion, are not thought to be of any novelty in the jurisprudence of Tennessee; and we should not have felt disposed to enlarge. upon them at the length as done, but for the earnestness and force with which the adverse views of the eminent counsel of Taylor, Cole & McLeod, were pressed upon the Court.
What is said above in respect of the case of Pope, disposes of the main question raised in the case of Strong, and disposes of that question against Taylor, Colo & McLeod.
The further errors alleged of Strong’s case, are not well taken, with one exception. It was no error to allow the change of plaintiff in this case.
Nor was it an error to refuse to dismiss the case on motion oí defendant’s counsel in the Court below. We are of the opinion that the enlargement of the ju risdiction of the Justices of the Peace in cases of this kind, to the extent of $250, by the Act of May 26, 1866, chapter 51, did not operate to abridge the jurisdiction before had by the Circuit Court in this class of actions.
But it was error to charge the jury, that if Armstrong took possession of the bagging and rope, without authority of Strong, or received it in any manner except by purchase from Strong, and sold it as his own property, it was a felonious act on the part of Armstrong; and the purchase of the bagging and rope by *426 them, and withholding it as their own, was a conversion for which they were liable to Pope. It may be all true that Armstrong did not purchase the bagging and rope from Strong, and had no authority from Strong to sell it, and sold it as his own property, and yet without being guilty of felony in so doing. The felonious intent may have been wanting, which is essential to constitute crime.
For this cause, reverse the judgment in the case of Strong, and order a new trial. And for the reasons assigned in this opinion, affirm the judgment in the case of Pope.