FALLS & CALDWELL *VS.* GAITHER.

1. An offer to sell property, not requiring an acceptance of the proposition to be accompanied with the purchase money, though made through an agent, may be re-called without notice being first given to the person to whom it is made; *aliter*, if the money is to be paid simultaneously with the acceptance, unless the continuance of the offer was for a limited time, and the acceptance was not made until after the limitation expired.

2. An offer to sell, which requires the payment of the money, as the condition of acceptance, can only be met by the payment of the money.

3. The period during which an offer to sell remains open to acceptance, depends upon the terms in which it was made, and other attendant circumstances.

4. An authority to an agent, to sell and receive the money, does not authorise him to sell, without receiving the money.

5. It is essential to a contract of sale, that there should be a concurrence of the minds of the vendor and vendee, though that concurrence need not take place at the same instant of time.

6. Though, as a general rule, the testimony of a subscribing witness, where his attendance is practicable, is necessary to prove the execution of a paper; yet, where the writing is executed by an agent, he is competent to prove it, even if the subscribing witness be within the reach of the process of the court.

Error to Marengo Circuit court.

Detinue—tried before *Chapman,* J.

The plaintiffs in error brought an action of *detinue,* in the Circuit court of Marengo, for the recovery of two female slaves of the defendant.

The defendant pleaded *non-detinet* and the statute of limitations, on which issues of fact were joined, and the case submitted to the jury. On the trial, the presiding judge sealed a bill of exceptions, from which it appears, that both the plaintiffs and defendant claim the slaves sued for, under one Pinkney Caldwell, formerly of the State of North Carolina. The plaintiffs proved and read to the jury, a bill of sale, of the following tenor, viz :

"February 14th, 1835.

"Received of Theophilus Falls and Joseph Caldwell, one thousand dollars, for two negro girls, Mariah and Charlotte, about seventeen years old, which are now in the possession of Forest Gaither, in Marengo county, Alabama. The title to said negroes I do warrant and defend to the said Falls and Caldwell. Given under my hand and seal, the above date.

PINKNEY CALDWELL, [seal.]"

They then proved the possession of the slaves in the defendant, at the date of the writ, their value, and the value of their services.

The defendant, on his part, offered in evidence a letter addressed to him by Pinkney Caldwell, of which the following is an extract:

"DALONEGA, Octo. 24th, 1834.

"*Dear Forrest:* I hope you will excuse me for not writing to you and family before this. I have for the last

Falls & Caldwell *vs.* Gaither.

two years been very anxious to visit Alabama, but the situation of my business would not admit of my leaving home. I have to call on you for money, and you may rest assured it is through pure necessity, which Hiram can explain to you. I am compelled to raise one thousand dollars, and have no other means only through you. If you will pay that amount to Hiram, I am willing to say, that it shall close all of our old business; and he shall make titles to the negro girls of mine that you have, to you. If you cannot do this, I am compelled to ask of you, (which I hope you will not refuse,) to give up to him the girls, and let him sell them for what they will bring. One of these requests, I do hope you will comply with. If I fail to raise the money from you, I must sell property here. Hiram can state to you the nature of my difficulties. If I can pay off what I owe here and in North Carolina, I will be in Alabama in the spring."

He also offered in evidence two bills of sale, subscribed with the name of Hiram Caldwell, which are as follows, viz :

"Received of Forest Gaither, five hundred dollars, in full payment for a negro girl named Mariah, aged about twenty years. I warrant the said negro to be sound and healty. Witness my hand and seal—March 10th, 1835.                          HIRAM CALDWELL, [seal.]

Test : *John Ward.*"

"Received of Forest Gaither, five hundred dollars, in full payment for a negro girl named Charlotte, aged about seventeen years. I warrant the said girl to be sound and healthy. Witness my hand and seal—March 10th, 1835.                          HIRAM CALDWELL, [seal.]

Test : *John Ward.*"

Falls & Caldwell *vs.* Gaither.

The defendant offered to prove the execution of the bills of sale, by the deposition of Hiram Caldwell, who, it appeared, had been released, so as to divest him of all interest in the event of the suit.   To the introduction of the bills of sale, and the mode of proving their execution, the plaintiffs counsel objected, for the following reasons:

1. There was a subscribing witness to each of the bills, who was not produced, or his absence accounted for;

2. The bills of sale were under seal, while the letter, under the authority of which it was alleged they were given, was not a sealed instrument;

3. That if any authority or power was given by the letter, it was special, and its execution limited to a reasonable time, whereas the bills of sale were not made till the expiration of four months and a half after its date;

4. That they appeared to have been made twenty-four days after the bill of sale to the plaintiffs from Pinkney Caldwell, which operated a revocation of the authority to Hiram Caldwell;

5. That the bills of sale were subscribed by Hiram Caldwell, in his own name, and not as the agent or attorney in fact, of Pinkney Caldwell.   Which several objections were overruled by the court, and the bills of sale read to the jury.

The defendant proposed further, to read to the jury the deposition of Hiram Caldwell—in which the witness stated, that he had delivered to the defendant the letter from Pinkney Caldwell, a few days after it was written

Falls & Caldwell *vs.* Gaither.

—that the defendant, at that time, said he would accept the proposition made by Pinkney Caldwell, and pay him (witness) one thousand dollars for the two negroes, and expressed his readiness to do it at that time, but that he informed the defendant he need not pay it, until he (witness) should be ready to start to North Carolina—That in the month of March or April, eighteen hundred and thirty-five, when the witness was ready to start to North Carolina, the defendant paid him one thousand dollars, the price of the negro girls in controversy, accordingly as he had stipulated with the witness, on receiving the letter of Pinkney Caldwell; and the witness conveyed them to the defendant, under the authority of the letter.

The witness further stated, that, as the agent of Pinkney Caldwell, he made a verbal contract with the defendant, early in November, eighteen hundred and thirty-four, to sell him the two slaves; and that although the bills of sale to the defendant, were subscribed by him in his own name only, that they were executed by him, as the agent of Pinkney Caldwell.

To the admission of this deposition, the plaintiffs objected—

1. Because the verbal agreement for a sale, was previous to, and extinguished by the bills of sale;

2. Because the bills of sale were contradicted and varied by the facts stated in the deposition. Which objections were overruled by the court, and the testimony read to the jury.

The jury having found a verdict against the plaintiffs, and a judgment being thereon rendered, they have prose-

cuted a writ of error to this court, for the revision of the same.

*Murphy*, for plaintiffs in error.

*Lyon*, contra.

COLLIER, C. J.—No question is raised in this case, as to the regularity of the bill of sale from Pinkney Caldwell to the plaintiffs, or the evidence by which it was proved to the jury. But the bill of exceptions leads us to enquire—

1. Was there a sale, and at what time, by Pinkney Caldwell, through the agency of Hiram Caldwell, to the defendant, of the slaves sued for?

2. Was the evidence by which the sale was attempted to be made out, admissible in law?

1. Though a difference of phraseology is employed in defining the contract of sale, by the elementary writers, yet all concur in the constituents, essential to its consummation. By Powell, it is stated to be a transaction, in which each party comes under an obligation to the other, and each reciprocally acquires a right to what is promised by the other—(Powell on Con. 4.) Chitty describes a sale, as a transmutation of property from one man to another, in consideration of some price or recompence in value—(Chitty on Con. 108.) And Mr. Chancellor Kent says, that a sale is a transfer of chattels from one person to another, for a valuable consideration, and three things are requisite, viz., the thing sold, which is the object of the contract; the price, and the consent of the contracting parties—(2 Kent's Com. 367, 1 ed.)

In order to render the contract valid, the thing sold must have an actual or potential existence. Thus, if one person sells to another his horse, which happens to be dead at the time, the contract is necessarily void, the object of it having failed, though the parties were alike ignorant of the fact.

In respect to the price, if property is sold for cash, and the money paid, the contract is complete; so, it is equally perfect, if a credit is stipulated, if no act remains to be done by the purchaser; as, if he has delivered to the seller the proper securities, *&c.* But if any act remains to be done by the vendee, to entitle himself to the immediate possession of the thing purchased, the contract is inchoate, and the title of the vendor does not pass from him. The distinctions upon this head are many and subtle, and as they do not materially concern the present enquiry, we proceed, for the present, to consider the third constituent of a sale—viz., *the consent of the contracting parties.*

In a contract of sale, it is agreed by all, that there must be a concurrence of the minds of the vendor and vendee. Thus, if a person offer to sell a thing, and prescribes his terms, and another agrees to purchase, but proposes other terms as the condition, there is no sale, unless the seller accept the modification; for until then, there is wanting the *aggregatio mentium.* What shall constitute a consent in every case, is liable to a great diversity of opinion. *Pothier,* with his accustomed accuracy of expression, supposes it to consist in the concurrence of the will of the vendor, to sell a particular thing to the vendee for a specified price, with the will of the latter to buy the same thing for that price.

In the case before us, it does not appear that the seller of the slaves ever had a personal interview in regard to the sale, but that the proposition to sell, was made by letter, written from a place, distant three hundred miles or more from the defendant's residence, and from where the slaves were at the time. Cases have frequently occurred, where, under such circumstances, a negotiation has been carried on between the contracting parties by letter—and, as in all probability, they will multiply with the increase of commerce and facilities of correspondence, it is necessary that such rules should be observed, as will subserve the convenience of parties, and protect their interest. While, therefore, it is impossible that there should be a contract, without the concurrence of the parties, it is not indispensable that their wills should concur at the same instant of time; providing the will of the one not concurring at first, is declared, before the consent of the other is re-called. Thus, although the party making the offer necessarily assents to a sale, before the party accepting, yet his assent must be continuing down to the time of acceptance; and unless the nature of the subject proposed to be sold, or the terms of the offer to sell require immediate action, the willingness to contract is presumed to continue, until the attempts of the parties at negotiation have ceased, unless the proposition is sooner withdrawn—(Adams vs. Lindsell, 1 Barn. & Ald. R. 681.) In the case here cited, the court say, "the defendants must be considered, in law, as making, during every instant of time their letter was travelling, the same identical offer to the plaintiffs; and the contract is complete, by the acceptance of it by the latter." The principle of this

Falls & Caldwell *vs.* Gaither.

decision is, that an offer to sell, made by letter, binds the party making it, when accepted, if not revoked previous to acceptance; up to that time, the *locus penitentiæ* of the seller continues, and if he has not exercised it, the bargain will be considered as struck. We are aware, that the doctrine, as we have stated it, was so qualified by the Supreme court of Massachusetts, as to require not only an acceptance of the offer, but also that it should have been notified to the party making the offer, or his knowledge be inferrable from the fact, that the party accepting, used the proper means to give notice, and a sufficient time had elapsed for its reception. In regard to this qualification, it has been well said, that if the contract is not consummated until the party accepting, has given notice to the party offering; upon the ground, that the parties must know that their minds meet on the subject of the contract, the accepting party ought not to be bound, till he knows the party offering, had not withdrawn the offer before knowledge of acceptance. But the case from Massachusetts does not, in our opinion, harmonise with the current of decision on the point, or the principles of law—(4 Bing. Rep. 653; Lupin vs. Marie, 6 Wend. Rep. 77; Mactier's adm'ors vs. Frith, ibid. 103.)

In Eliason vs. Henshaw, (4 Wheaton's Rep. 228,) it is said, that "until the terms of the agreement have received the assent of both parties, the negotiation is open, and imposes no obligation on either." So, in the Circuit court of the United States for Pennsylvania, it was held, that contracts are made by an offer on one side, and an acceptance on the other—(Coxe's Dig. 192.) These cita-

tions show, that it is the assent of the parties that completes the contract. It must, then, be very immaterial, whether the parties themselves mutually possess the knowledge that their minds have met, since, before the stipulations of the contract are executed, they must know it, that each may perform the terms it respectively enjoins.

Since, however, a proposition to sell, imposes no obligation, till accepted, it is, *in general*, competent for the party offering, to withdraw it, any time previous to acceptance; and if he do so, a subsequent acceptance will not bind him, though made before the accepting party had notice of the withdrawal. To exemplify: suppose A has offered by letter to sell to B a slave—B accepts the offer, by addressing a letter to A, assenting to his terms: if the latter did not, previous to the date of B's letter, recall the offer, he is bound by the contract—but if he withdrew it, by a letter *sent to B*, before B's letter was written, the acceptance of the latter would be unavailing for any legal purpose; and this, too, though the letter of withdrawal was not received. This example rests upon the well settled rule, that the concurrence of both parties is essential to a contract of sale, though given at different times.

Having stated these principles, we will now apply them to the facts upon the record. Pinkney Caldwell being in need of money, both in North Carolina and Georgia, writes a letter from the latter State, to the defendant, residing in Marengo county, Alabama, in which he proposes to sell to him two negro girls belonging to him, (Caldwell,) but then in the possession of the defend-

Falls & Caldwell *vs.* Gaither.

ant, for the sum of one thousand dollars, to be paid to Hiram Caldwell, who would execute a bill of sale there-for. Hiram Caldwell, it appears, was the bearer of the letter, and delivered to the defendant, a few days after it was written. Upon the delivery, the defendant expressed his willingness to purchase the slaves, and his readiness then to pay for them; to which the agent replied, that it was not necessary—that he did not want the money, till he was ready to return to North Carolina. In March, eighteen hundred and thirty-five, when Hiram Caldwell was about leaving for North Carolina, he called on the defendant for the money, received it, and made him bills of sale for the negroes, in his own name.

Now, it is clear, that what passed between Hiram Caldwell and the defendant, upon the former delivering to the latter, the letter of Pinkney Caldwell, did not amount to a sale of the negroes. The proposition of Pinkney Caldwell, was to sell for cash—no money was paid at that time by the defendant. The agency of Hiram Caldwell, so far as the letter affords evidence of it, was to receive the money, and execute a bill of sale. The offer to sell, then, was not met by the defendant, in the only manner in which it could have been, viz., by the payment of the price; and Hiram Caldwell was not authorised to agree upon other terms.

We have seen that the period during which an offer to sell, is considered as remaining open, depends upon the circumstances of the case, and must be regarded rather as a question of fact, than of law. In the present case, we infer that the object of Pinkney Caldwell, was to sell the slaves, and receive the money by Hiram Caldwell,

on his return to North Carolina or Georgia, as it was there, that his necessities required it, and consequently, the offer, unless withdrawn, may be supposed to continue until that time. Such being the interpretation to be placed upon the letter of Pinkney Caldwell, when taken in connection with Hiram Caldwell's deposition, we must consider whether there is any evidence of the withdrawal of the offer to sell. The only evidence on this point, is the bill of sale to the plaintiffs: this clearly indicates an indisposition or inability on the part of Pinkney Caldwell, to sell the slaves to any one else, after the plaintiffs became the purchasers; and if the letter to the defendant, was a mere offer to sell, without requiring an advance of money, the sale to the plaintiffs would have operated as a re-call of it. But such is not its character—the letter proposes, it is true, to sell; but it goes further—it designates an agent to receive the money, and to furnish the proper evidence of a transfer of title. To allow the sale to the plaintiffs to prejudice the defendant, without proof that he was cognizant of it before he advanced his money, would be the extreme of injustice. Here, the defendant is in possession of the property, unconscious that the owner had sold it—the owner previously informing him, that he had appointed an agent to sell to him at a fixed price. A purchase made under such circumstances, must be allowed to relate back to the time the letter was written, in order to sustain the defendant's title. If Pinkney Caldwell, then, had a title, the defendant must be regarded as succeeding to it. Upon the opposite conclusion, purchases through an agent of the seller, would be hazardous, as it could not be known

Falls & Caldwell *vs.* Gaither.

where the principal resided at a distance from the place of sale, that he had not previously sold the property, or withdrawn the authority of the agent.

Thus we have seen, that an offer to sell, not requiring its acceptance to be accompanying with the money, may be re-called, without notice being first received by the person to whom it is made—that an offer, which requires the payment of the money as the condition of acceptance, cannot be accepted, unless the money is paid—that an authority to a third person to receive money and convey title, binds the principal, unless he has revoked it, and given notice, either expressly or impliedly to a person, who, upon the faith of the power, pays the money, and receives a conveyance of title—that the period during which an offer to sell remains open to acceptance, depends upon the terms in which it is made, and other attendant circumstances. It will follow, from the ascertainment of these principles, that if the purchase of the defendant, through Hiram Caldwell, was not tainted with fraud, or other circumstances of unfairness, his title must be preferred to that of the plaintiffs.

2. The bill of sale from Hiram Caldwell to the defendant, cannot be regarded as the *act* of Pinkney Caldwell —it does not profess, on its face, to have been made for him, but is made by, and executed in the name of, Hiram Caldwell *alone*. The case of Skinner vs. Gunn & Gunn, at this term, is decisive of the point; yet it was competent for the defendant to have resorted to other evidence, to make out his title. No deed or other writing, is necessary to pass the title to personal estate, and the deposition of Hiram Caldwell was clearly admissible, to show

9 P        78

that he had received the purchase money on account of his principal, such evidence would have been equivalent in law, to a bill of sale executed in due form, by Pinkney Caldwell.

It has been argued for the plaintiffs, that even conceding that the defendant sustained his title without the aid of the bill of sale, yet the admission of the bill of sale was an error, for which the judgment of the Circuit court should be reversed. It is a well settled rule of evidence, that where a deed or other instrument is produced, which is attested by a subscribing witness, the party offering it, must call the witness to prove its execution, or else account for his absence; so strict is this requirement, that it is not dispensed with in the case of a deed, by the acknowledgment of the party executing it. The rule results from the legal supposition, that the parties themselves, by selecting a subscribing witness, have mutually agreed to rest upon his testimony, in proof of the execution of the instrument, and of the circumstances which then took place, and because he knows those facts which are probably unknown to others. The idea, that the subscribing witness is better acquainted with the circumstances attending the making the instrument, we all know is frequently unfounded in point of fact; yet the legal rule is too firmly established, to be departed from, where the attendance of the witness can be coerced—(See 1 Starkie's Ev. 330; 4 Burr. Rep. 2275; 4 M. & S. Rep. 350; Fox et al. vs. Rail et al. 4 Johns. R. 477; Abbott vs. Plumbe, Doug. R. 216; 2 East's R. 187; Johnson vs. Mason, 1 Esp. Rep. 89; Jones vs. Brewer, 4 Taunt. Rep. 46; Call vs. Dunning, 4 East's R. 53; Bowles vs.

Falls & Caldwell *vs.* Gaither.

Langworthy, 5 T. R. 366; Willoughby vs. Carleton, 9 Johns. R. 136; Manners vs. Postan, 4 Esp. R. 239; Breton vs. Cape, Peake's Cases, 30; Edinburgh vs. Crudell, 2 Starkie's Cases, 281; Hogland vs. Sebring, 2 South's R. 103; Williams vs. Davis, 1 Penn. R. 177; McMahan vs. McGrady, 5 Serg. & Rawle's R. 314; Heckert vs. Haine, 6 Binn. R. 16; Higgs vs. Dixon, 2 Starkie's Cases, 180; Barnes vs. Trompowski, 7 T. R. 266; Handy vs. The State, use of Townsend, 7 Har. & Johns. R. 42; Williams' ex'rs vs. The Mayor of Annapolis, 6 Har. & Johns. R. 350; McPherson vs. Rathbone, 11 Wend. 98; Sluby vs. Champlin, 4 Johns. R. 461.) In the case of Bennet vs. Robinson's adm'r, (3 Stew. & Por. R. 227,) the question came directly before the court. There, the defendant denied that his intestate had executed the note declared on. The plaintiff, who was the assignee of the note, was also a subscribing witness, and having become interested, offered proof of his hand writing, which being rejected, he proposed to prove the signature of the maker, and his admission that he signed it—which evidence was also rejected by the Circuit court. This court reviewed the leading authorities with great care and industry, and conclude, that where the execution of an instrument, whether under seal or not, is properly in issue, the evidence of the subscribing witness is the best, and only admissible evidence, if he be living, and within the reach of the process of the court; unless he has become legally incompetent, from some cause not chargable as a fault, against the party on whom it devolves to make the proof. That evidence of the hand-writing of the subscribing witness to a promissory note, or of the signature

of the maker, and his admission of its execution, is not admissible in an action against the maker, where such subscribing witness, after attesting the note, become the assignee thereof, and sues as plaintiff. Whatever might be my opinion, if this case were *res integra*, it is enough to say, that the question is settled, by authority which I do not feel licensed to disregard.

It was argued for the defendant, that, conceding the general rule to be as we have stated it, the case at bar does not come within its influence—that Hiram Caldwell being an agent, was a competent witness to prove the execution of the bill of sale, though the attendance of the subscribing witness might have been coerced. No authority has been cited to sustain this distinction, and my reflections persuade me, that it is not defensible in principle; yet my brethren differ with me, and think the argument well founded, and maintain that there is no objection, as evidence to the bills of sale offered by the defendant, or to the manner in which they were proved.

It is no objection, on error, that a party has given more evidence in the primary court, than was necessary to maintain his action or defence, if the evidence be unexceptionable in point of law; but he will not be allowed to justify the proceeding below, by showing, that in addition to the illegal evidence, he produced a sufficiency of legal proof for his purposes. All the evidence adduced under the sanction of the court, is to be weighed and considered of, by the jury; and it will be impossible to say, that their verdict was not influenced by that improperly admitted. What may have influenced one juror, possibly may not have been regarded as of any mo-

ment by another; and it is from the utter impractica-
bility of knowing what effect the different parts of the
evidence had on the minds of the jury, or by what process
of reasoning they were lead to their conclusion,—that an
exception for illegal, whatever may be the *quantum* of le-
gal evidence, is always available.

Thus, it will be seen, that my own opinion upon the
*second question,* is favorable to a reversal of the judgment
of the Circuit court,—but my brethren differing with
me, as I have already stated, the judgment must be af-
firmed.

ORMOND, J.—I dissent from the opinion given in this
cause, so far as it asserts that the offer of Gaither to pay
the price demanded for the negroes, was not equivalent
to a payment. I know of no case, where by the terms
of a contract, an act is required to be done by either par-
ty, and the party offering to do the act, is prevented by
the other party from doing it—that such offer to perform,
is not equivalent to a performance. Hiram Caldwell
was the bearer of the proposition from the owner of the
slave, to Gaither, and his authority was confined to the
reception of the money, and executing the bills of sale.
Upon the acceptance of the proposition by Gaither, and
the payment, or offer to pay, the money to H. Caldwell,
the right of Gaither was complete to the slaves. This
right could not, on any principle with which I am ac-
quainted, be divested by the act of another.

There could not be any controversy or doubt in this
matter, if the money had not, at the instance of H. Cald-
well, been permitted to remain in the hands of Gaither.

By so acting, I do not understand that the purchase was suspended, but that the contract was closed, and that Gaither was merely a depositary of the money for H. Caldwell. Had the negroes died the next day, there can be no doubt, I think, that he must have sustained the loss.

My argument assumes the transaction, as stated by H. Caldwell, to be true, and that Gaither and H. Caldwell were acting in good faith. If it was a plan devised between them, to give a credit to Gaither, it would not be binding on Pinkney Caldwell. If the agent had refused to receive the money, it would probably have been the duty of Gaither to advise Pinkney Caldwell of the fact, that he might take the necessary steps to obtain his money; but that is not this case. If the owner of the slaves, instead of proposing his terms through Hiram Caldwell, had made the offer himself, the sale would have been complete, on the acceptance of the terms by Gaither; and his refusal afterwards to receive the money, or his permitting it to remain in the hands of Gaither until called for, could not affect its validity: the case cannot be altered by the interposition of an *agent.*

That a sale is complete, when the offer is accepted, even although the person making the offer by letter, does not know of its acceptance until afterwards, is very conclusively shown by Judge Marcy, in the case of Mactier's adm'rs vs. Frith, (6 Wend. 103.) This proposition, I understand the majority of the court to affirm; but they suppose, that as the money was not paid down, when the offer was accepted, the contract was not complete. I think I have shown that this is not the test;

that in all cases of sales, an offer to pay, is in law, equivalent to a payment, and that the right to the thing sold, cannot depend upon the acceptance of the price by the seller.