# Burks *v.* Hubbard.

*Trover for the Conversion of Cotton.*

1.   *Agent; authority to sell does not include authority to sell on credit.*
It is a principle well settled in the law of agency, that an authority given
an agent *to sell*, does not carry with it an authority to sell *on credit*, but
for *cash* only, unless such be the usage of trade.

2.   *Special agent; no authority to pay his own debts with property of
principal.*—A special agent clothed with authority to sell property placed
in his possession, can not do so by disposing of such property in payment
of his own. debt.   A valid exercise of his authority requires that the·
transaction should be one for the benefit of the principal and not of the·
agent—a sale proper and not a mere barter.

3.   *Same ; parties dealing with bound to ascertain extent of authority.*
Any one dealing with such special agent is bound, at his own peril, to as-
certain the extent of his authority.

4.   *Party in possession of mortgaged personal property ; onus on him to
show that his possession is rightful.*—Where personal property covered by·
mortgage is traced into the possession of a party who had constructive·
notice of the mortgage, and he seeks to defend his possession by showing·
that it was rightful, the burden rests upon him to prove his defense.   And
if he seeks to do this, by showing a purchase of the property from the
mortgagor acting as the agent of the mortgagee, he must show that the
mortgagor, as such agent, had authority to sell, and that, in making the·

[Burks v. Hubbard.]

sale, the authority conferred upon him by the mortgagee was strictly followed; and that, if such authority was restricted to a sale for cash, cash was in fact paid for the property.

5. *Agent's authority to sell; repudiation of, by principal.*—In an action of trover brought by a mortgagee against a party who claims to have purchased from the mortgagor as the agent of the mortgagee, it is competent for the plaintiff to show a prompt repudiation of the mortgagor's alleged authority to sell, and the absence of such acquiescence as might have been construed into a ratification of the sale. And for this purpose, the debt secured by the mortgage being for rent and advances due from the mortgagor, as tenant, to the mortgagee, as landlord, the fact, that the latter had sued out an attachment against the former for the recovery of such rent and advances, is relevant, and the writ of attachment is admissible in evidence for the sole purpose of showing this fact.

6. *Market price of property; how proved.*—The market price of property being a conclusion which is largely made up of presumptions, may always be proved by the opinions of witnesses, based, of necessity, in part at least, on hearsay.

7. *Trover; measure of damages.*—In trover it is competent to prove the highest value of the property alleged to have been converted at any time between the date of conversion and the time of the trial, as it is within the power of the jury, in this action, to assess the damages of the plaintiff at a sum based on such value, or on a value not less than that of the property converted at the date of the conversion, with lawful interest.

8. *Same.*—The discretion of the jury, in selecting the exact period of valuation, in trover, should be exercised in such manner as to prevent the defendant from reaping pecuniary profit through his wrongful act, and, in proper cases, to permit the special equities or hardships of the particular case so to operate in the mitigation of damages, as exact justice may require.

APPEAL from Montgomery Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

This action was brought by Samuel D. Hubbard, Jr., against W. B. Burks, George P. Burks and S. J. Rushton, and was commenced on the 26th of February, 1879. The complaint contained three counts, the first of which was in trover for the alleged conversion by the defendants of eighteen bales of cotton; the other two counts were in case, the averments of which it is unnecessary to set out, as the cause was tried on the first count. The plaintiff claimed title to the property alleged to have been converted, under a mortgage executed by one S. M. Jones, who, as plaintiff's tenant, had cultivated lands belonging to plaintiff in Montgomery county, and had raised thereon a crop of cotton. As shown by the bill of exceptions, the defendants pleaded in short, by consent: 1st. " The general issue with leave to give in evidence any matter of defense, or in bar, which could be specially pleaded or replied;" 2d. " A special plea that the plaintiff had given his tenant, S. M. Jones, permission or authority to sell the cotton in controversy; and that the cotton purchased by defendants from said tenant Jones, was bought by them after said authority had been given by plaintiff to said Jones, as aforesaid; and that said cotton was sold by Jones to

[Burks v. Hubbard.]

defendants under and in accordance with said permission or authority." Upon the issues thus presented the cause was tried. On the trial, the plaintiff read in evidence a mortgage executed by S. M. Jones, on the 6th of October, 1877, duly acknowledged and recorded in the office of the judge of probate of Montgomery county, conveying, among other things, "the entire crop of cotton . . . which may be produced" on lands in said county belonging to plaintiff and called the "Bentley Place," during the year 1878. The testimony of witnesses examined on the trial tended to show, that Jones cultivated said place during said year, as the tenant of plaintiff, and raised a crop of cotton thereon; that plaintiff had not fully collected the debt secured by the mortgage, and that Jones, during the latter part of 1878, sold and delivered to defendants thirteen bales of cotton. The evidence was conflicting as to what part of this cotton was raised on the "Bentley Place;" the evidence introduced on behalf of the plaintiff tending to show that all of it was raised on said place, while that introduced on behalf of the defendants tended to show that only seven bales thereof were raised on said place. The plaintiff introduced and examined as a witness one C. A. Allen, who testified, "that he is now, and has been for years past, engaged in the cotton and warehouse business, and is acquainted with the current prices and market value of cotton. Plaintiff, thereupon, asked said witness to state, if he knew, the highest point or price to which cotton had reached at any given time since the 1st day of October, 1878. Defendants objected to this question, but the court overruled the objection and allowed the witness to answer. To this ruling of the court defendants duly excepted. Witness then answered, that the price of cotton depended largely upon the grade or quality, the character of the soil upon which it was grown, and upon a variety of other causes and circumstances; and that the highest and best grade of cotton, for a very short time during the spring of 1879, touched thirteen cents per pound. Defendants objected to this answer and moved to exclude the same; but the court overruled the objection and motion, and defendants duly excepted." The plaintiff also offered in evidence "the attachment proceedings in the case of S. D. Hubbard v. S. M. Jones, in the Circuit Court of Montgomery county, decided at the December Term, 1878, of said court, including therein the affidavit, bond, attachment writ, the levy of the sheriff endorsed on the writ and the judgment entry in said cause. To this defendants objected, but the court overruled the objection so far as to permit the writ of attachment in said case, with the sheriff's levy endorsed thereon, to go in evidence to the jury, only to show that an attachment had been issued and levied, to which ruling of the court" defendants excepted. The plaintiff then

read in evidence the said writ with the levy of the sheriff en-dorsed thereon, which is made an exhibit to the bill of excep-tions, is dated the 25th October, 1878, and shows that it was issued to attach the crops raised by said Jones during said year on the "Bentley Place," to pay the debt which was secured by said mortgage to plaintiff, and that it was levied on part of said crops, on the same day it was issued. The evidence further tended to prove, that on the 1st day of August, 1878, said Jones was indebted to defendants in the sum of about $150.00, which amount was paid to defendants by Jones out of the proceeds of the sale of the thirteen bales of cotton which they purchased from him during the latter part of 1878; that after the 1st day of August, 1878, said Jones made some small purchases from defendants of goods and merchandise, the particular amount and value of which the defendants did not show, which were paid for out of the purchase-money of the cotton, by defend-ants giving Jones credit therefor, and paying him the balance in money along as the cotton was bought; that the balance of the proceeds of the thirteen bales of cotton was paid in money to Jones by defendants; that said cotton was purchased prior to 25th October, 1878, in open market, upon the public streets of Montgomery, in the usual course of trade, in good faith and without any knowledge or notice, on part of defendants, that plaintiff had or claimed to have any interest in or lien upon said cotton. Evidence was also introduced on the trial tending to show, that prior to the purchase by defendants from Jones of said thirteen bales of cotton, or any part thereof, plaintiff had given Jones authority to sell the cotton raised on the "Bentley Place" during the year 1878.

The court, on the written request of the plaintiff, gave to the jury the following charges: 1. "If the jury find that plain-tiff authorized Jones to sell the cotton raised on said Bentley place for the purpose of getting the money therefor, and pay-ing it to plaintiff, then this did not authorize Jones to dispose of said cotton in payment of any debt he owed, or for any thing but money, which he could pay the plaintiff, and if defendants received said cotton in payment of any debt Jones owed them, such sale was not authorized by such agency conferred upon Jones by plaintiff, if the jury find that this was all the authority Jones had to sell the cotton." 2. "If the private instructions to Jones to sell for money to be paid to plaintiff was a part of the authority to sell the cotton, this constituted Jones a special agent, and defendants bought at their risk, as to the extent of such authority." 3. "The burden of showing the amount of money paid by defendants to Jones, and the amount of credit to Jones' account, of the proceeds of the cotton, rested upon the defendants; and if they have failed to show these respect-

[Burks v. Hubbard.]

ive amounts, they are liable, if at all, for the value of all the
cotton of plaintiff purchased by them of Jones." To the giv-
ing of each of these charges the defendants separately excepted.
The jury returned a verdict in favor of the plaintiff, on which
the court rendered judgment; and from this judgment the de-
fendants appealed, and here assign as error the several rulings
of the Circuit Court, to which exceptions were reserved, as
above noted.

RICE & WILEY, for appellant.

T. M. ARRINGTON, *contra*.

(No briefs came to the hands of the reporter.)

SOMERVILLE, J.—It is a principle well settled, in the law
of agency, that an authority given an agent *to sell* does not carry
with it an authority to sell *on credit*, but for *cash* only, unless
such be the usage of trade.—1 Parsons on Cont. 50; *Falls v.
Gaither*, 9 Port. 605. Nor can a special agent, entrusted with
the possession of property, who is authorized to sell it, do so
by disposing of it in payment of his own debt. A valid exer-
cise of his authority requires that the transaction should be one
for the benefit of the principal and not of the agent—a sale
proper, and not a mere barter.—Benjamin on Sales, § 742;
*Powell's Adm'r v. Henry*, 27 Ala. 612.

And one dealing with such special agent is bound at his own
peril to ascertain the extent of his authority.—*Cummins v.
Beaumont*, 68 Ala. 204; 1 Brick. Dig. p. 55, § 35.

The first two charges given by the court recognized these
principles, and were authorized by the evidence.

Nor do we see that there was any error in the last charge in
regard to the burden of proof. When the plaintiff proved the
possession by him of a mortgage on the cotton purchased by
the defendants, and that they had constructive notice by the
fact of its being recorded, it devolved on the defendants to
show that their possession was rightful. This they sought to
do by showing a purchase from one Jones, who was alleged to
have authority to sell the cotton as the agent of the plaintiff.
This authority being only to sell for cash, and its exercise being
invoked as a defense, the strict and lawful pursuance of it must
be proved. The *onus* always rests on each party to prove every
material fact necessary to make out his case, or defense. As
defendants might be liable for all the cotton traced into their
possession, even if Jones had authority to sell, they could only
rebut this *prima facie* case by proving that they paid *money* or
*cash*, the sole consideration for which they could buy. It is

true that they would be relieved of liability so far as they did pay money, and would only be liable to the extent of Jones' account which he sought to pay with his principal's property. Nevertheless the burden of proof rested on them to show these respective amounts, and this was all the charge in question intended to assert.—1 Whart. Ev. § 358.

The fact that an attachment was sued out against Jones by the appellee, Hubbard, was relevant, and the writ of attachment was properly admitted in evidence for the sole purpose of proving this fact. It was competent to show a prompt repudiation of Jones' alleged authority to sell the cotton, and an absence of such acquiescence as might have been construed into a ratification of the act.

The testimony of Allen as to the price of cotton was properly admitted. Taken in connection with the preceding interrogatory and answer, it obviously had reference to the *market* price of cotton, a conclusion which is largely made up of presumptions, and may always be proved by the opinions of witnesses based of necessity, in part at least, on hearsay.—1 Whart. Ev. § 448.

It was also competent to prove the *highest* price of cotton at any time between the date of conversion and the time of the trial, as it was within the power of the jury, in an action of *trover*, to assess the damages of the plaintiff at a sum based on such price, or on a price not less than the value of the cotton at the date of conversion, with lawful interest.—*Ewing v. Blount*, 20 Ala. 694; *Jenkins v. McConico*, 26 Ala. 213. This discretion of the jury, in selecting the exact period of valuation, should be exercised in such manner as to prevent the defendant from reaping pecuniary profit through his wrongful act, and, at the same time, in proper cases, to permit the special equities or hardships of the particular case so to operate in the mitigation of damages, as exact justice may require.— *Williams, Adm'r, v. Crum*, 27 Ala. 468; *Loeb Bros. v. Flash Bros.*, 65 Ala. 526; 6 Wait's Act. and Def. p. 222, § 9.

We discover no error in the record, and the judgment of the Circuit Court is affirmed.