WINDERS v. HILL.

(Filed May 28, 1906).

*Specific Performance — Breach of Contract — Joinder of Causes — Defect of Parties — Contracts—Performance— Reasonable Time—Agency—Option—Sales on Credit— Ratification.*

1. A cause of action for specific performance may be joined with one for damages resulting from a breach of the contract, or for a delayed performance, or for any other damages growing out of the transaction.

2. Where a contract of sale was made directly with a syndicate, composed of plaintiff "and others," Revisal, section 404, providing that a trustee of an express trust may sue alone, does not apply, and where plaintiff sued without joining his associates, a demurrer for defect of parties should have been sustained.

3. The general principle is that when no time is specified in a contract for the performance of an act or the doing of a thing, the law implies that it may be done or performed within a reasonable time.

4. The power to an agent to sell land does not of itself imply an authority to sell on credit. The presumption is that the sale is to be for cash.

5. Where defendant wrote H. that if he could handle defendant's land so as to net defendant a certain sum, he might do so and that the offer was good for four months, and that if H. should meet with some success in selling it about the end of four months, defendant would give an extension, and the letter used the expression, "This note should be used as an option to purchase," and H. sold the land within four months purporting to act as agent for defendant, *held*, even if the correspondence amounted to an option to H. to buy, he did not avail himself of the option, but acted as defendant's agent, and although he exceeded his authority in selling on credit, if the defendant ratified the act, he would be bound, and this question of ratification must be submitted to the jury.

ACTION by J. B. Winders against E. J. Hill and I. F. Hill, heard by *Judge W. R. Allen,* upon defendants' demurrer, at the January Special Term, 1906, of the Superior Court of DUPLIN. From a judgment overruling the demurrer, the defendants appealed.

This action was brought by the plaintiff for the purpose of compelling specific performance of a contract which he alleges was made by the defendant with him and by which the latter agreed to convey to him a tract of land described in the contract as follows: "Situated in Warsaw Township, Duplin County, N. C., extending from the corporate limits of Warsaw to the Boyette Mineral Spring and lying on both sides of the Williams road, adjoining the lands of W. L. Hill, W. H. Williams and others, and containing 2,500 acres, excepting 100 acres in the immediate vicinity of what is known as the Boyette Mineral Spring, located near the Williams road, and on the branch immediately adjoining the Williams land." It is alleged in the complaint that by correspondence, which is fully set out, the defendant either appointed the plaintiff his agent to sell or gave him an option to buy the land according as the correspondence should be construed, the agency or option to continue from June 6, 1905, to October 7, 1905. We will state the material parts of the correspondence and exhibits. In June, 1887, the defendant, then about to leave the State to reside in San Francisco, appointed his brother, I. F. Hill, of Durham, N. C., his attorney for the following purpose: "To ask, demand, sue for, recover and receive all such sums of money, debts, goods, wares and other demands whatsoever, which is or shall be due me or owing, payable and belonging to me in any way or manner, either at law or in equity. To take possession of, rent out, lease, sell, bargain, grant and convey upon such terms, in such quantities and at such prices (as he may deem most beneficial to my estate) all my interest, right or title in certain lands and real estate located in said County

of Duplin (describing the tract in controversy and other land), and generally to do, execute and perform all such acts, deeds, matters and things touching my entire estate and effects, both real and personal, as shall and may be requisite and necessary to be done and performed for the prudent management of my property and the profitable conduct of my business, as fully in all respects and to all intents and purposes as I myself might or could do if personally present. I, the said Edward J. Hill, hereby ratifying and confirming all the acts and things done by my said attorney lawfully in pursuance of these presents." On May 23, 1905, the defendant wrote from San Francisco, Cal., to L. F. Hall, of Pocomoke, Md., as follows: "Some time last summer you were making an effort to purchase my land near Warsaw. If you are in a situation to handle it, advise me. I am anxious to dispose of the property, although the price of land is rising in that section." Hall replied: "Your favor of the 5th to hand and I note what you say in same. Now I will say that I believe I can handle your property and make sale of the same at the price of $18,000, but when you place a higher consideration on it, you drive away contemplated buyers from you. Now if you feel inclined to give me an option on your property, say from four to six months, I may be able to take parties down to whom I may be able to close out the whole." To this the defendant replied by letter, dated June 6, as follows: "Yours of May 29th to hand, and if you can handle my property so as to net me $20,000 you are at liberty to do so. This offer is good for four months from this date. There are somewhere in the neighborhood of 2,500 acres of it. The amount I will not guarantee, probably it would turn out to be considerably more on a survey. From this offer is excluded one hundred acres in the immediate vicinity of what is known as the Boyette Mineral Springs, located near Williams road, and on the branch immediately adjoining the Williams land. This I

wish to reserve, so as to show my identity in the county. This note should be used as an option to purchase." "P. S.—Of course, should you meet with some success in selling it about the end of four months and wish an extension of time, I will give it to you. In case you do not meet with encouragement from your prospective buyer, advise me, as I have some parties wishing to buy the timber if I cannot sell the land." Hall, in a letter of June 13, acknowledged the receipt of the "option" and expressed a fear that the price was too high for any profit to him, but agreed to try and see what could be done at the price fixed, and intimated that he might want more time within which to sell. In a letter of July 17, he states that he had looked over the property with certain parties, who asked for a reduction of the price, and were told by him that $20,000 was the limit price unless defendant would make a concession, and he would see what could be done. He then inquired if defendant would take a certain part in cash, the purchaser to have the privilege of paying the balance by cutting the timber and paying the defendant $2 per thousand for the same to be applied at that rate to the purchase money until all is paid. To this the defendant, by letter of July 27, replied: "As to the price of the land, I do not feel that I can knock off anything whatsoever. Upon the question of cash and time payments, I suggest you write me what is the best you can do. I want as much cash as I can well get, and the balance can go at the highest rate of interest allowable in North Carolina; interest payable annually. Write me at once what are the best terms you can give. I have some other purchasers for this property. I put my price down so low that I thought it would be grabbed up at once. I suggest that you take the matter up with my brother, Isham F. Hill, at Durham, but should you see fit to write him, send me a copy of the letter, so that I can be in communication with him. You might take a trip to Durham to see him. Let me hear what you can do." On July 29,

and before he had received any answer to his last letter, Hall sold the land to the plaintiff and his associates for $20,000, collected one hundred dollars of the purchase money and gave the following receipt: "Received of a syndicate, composed of J. B. Winders and others, the sum of one hundred dollars, as part payment on tract of land near Warsaw, N. C., belonging to E. J. Hill, of San Francisco, Cal., and by authority from said E. J. Hill, dated June 6, 1905, authorizing me to sell the same for him so as to net him $20,000, I have this day sold to the said syndicate of J. B. Winders and others the said land of E. J. Hill, as agent for said Hill, as per authority contained in same. The lands are said to contain 2,500 acres, more or less, and do not include the mineral springs and one hundred acres reserved with same. Balance of purchase money to be paid by October 7, 1905, as may be agreed upon by said Hill and purchasers. (Signed) L. F. Hall, Agent." Hall also assigned to them the option of June 6. On the same day he sent to defendant the following telegram: "Closed deal for your lands as per option," and also mailed to him a letter giving the details of the sale and enclosed a check for the one hundred dollars and a receipt to be signed by the defendant for the one hundred dollars, which also set forth the terms of the sale and provided that upon payment of the balance of the purchase money, on or before October 7, 1905, the defendant should make title to the purchasers. The plaintiff then alleges that upon receipt of the said telegram and letter of July 29 the defendant notified his brother, I. F. Hill, who lived in Durham, that he had sold his lands to the plaintiff for twenty thousand dollars, and I. F. Hill thereupon notified a party in Warsaw to the same effect. That a few days afterwards a real estate company in Wilmington offered I. F. Hill an advance of $2,000 on the price, or $22,000 for the land, and thereupon I. F. Hill came to see the plaintiff, and as agent of the defendant, his brother, and stating

that he was acting in that capacity, offered the plaintiff $500 to release the defendant from the contract made by L. F. Hall for the sale of the land to him. This offer the plaintiff declined. That I. F. Hill then conferred with the real estate company and in a few days called again, to see the plaintiff and, acting as agent of the defendant and 'so representing himself to be at the time, offered to give the plaintiff $1,500 if he would release the defendant from the contract, which the plaintiff refused to do and insisted on a deed for the land under the contract. Thereupon the said I. F. Hill stated to plaintiff that he had a telegram from his brother placing the lands at his disposal, and he then offered to resell the land to the plaintiff, but the latter declined to make any agreement with him and again insisted on the fulfillment of the contract he had made with Hall. I. F. Hill then stated that he had authority to sell the land and to make a deed therefor and he intended to do so, and that plaintiff could sue the defendant for damages, but that he could not recover more than $1,500, which sum had already been offered him, and urged the plaintiff to relinquish his claims, which he again refused to do. Hall received no reply to his telegram and letter of July 29 until August 24, 1905, when the defendant wrote him a letter, dated August 14, stating that after receiving his telegram, he waited for his letter, which he had received. He then refused to be bound by the contract of Hall with the plaintiff, upon the ground that Hall had not accepted his offer made in his letter to him of June 6, as Hall had stated in his letter of June 17 to the defendant that his price was too high and had asked for a reduction of the price and an extension of the time of payment and that, in his letter of July 27, he had asked Hall for the best terms he could make, to which request he had received no reply. He then refused to accept the one hundred dollars and charged Hall with pretending to act as his agent without any authority to do so, as Hall's letter of

July 27, in which he asked for a concession on the price and time, cancelled his offer of June 6, and stated that in the future that offer would not be respected. He then agreed to consider a new proposition from Hall for cash, but declined to deal with a "mythical syndicate" or to receive local bank checks or small payments or to permit Hall as his agent to encumber his title to the land. Hall replied to this letter on August 25 and expressed great surprise at its contents and asserted that the defendant first opened the negotiations, and that he (Hall) had acted strictly according to the authority conferred upon him by defendant's letter of June 6, and that he had acted in good faith in the matter. On August 29 the defendant by telegram to Hall withdrew all propositions to him for the sale of the land. Plaintiff then alleged that on September 19, 1905, he tendered payment of the full amount of the purchase money to Hall as defendant's agent, and demanded a deed for the land. Hall stated that he had no authority to make a deed and referred him to I. F. Hill, who had the necessary power to do so. That plaintiff went to Durham and tendered to I. F. Hill, as agent of the defendant, the amount of the purchase money, and demanded a deed. I. F. Hill before leaving conferred with his counsel and then informed the plaintiff that he would neither accept nor reject the tender. That he made a second tender to I. F. Hill, "who refused to accept the money and make the deed, although he had the power and authority to do so." That the defendant was notified by telegram on September 20 that a tender of the money had been made to Hall and was asked where to deposit the same. To this telegram defendant made no reply. The plaintiff further alleges that the defendant refused to receive the purchase money and make title to the plaintiff for the reason solely that he had been offered a higher price by the real estate company in Wilmington after Hall, as defendant's agent, had sold to the plaintiff. The plaintiff has always kept his tender good. That the plaintiff

relying on the good faith of the defendant, entered into possession of the land immediately after it was sold to him by Hall, as agent of the defendant, and made extensive preparations to manufacture and sell the timber and to develop the land, and was put to great trouble, cost and inconvenience in securing the money to pay for it. He prays judgment: (1) For specific performance, and (2) For $20,000 damages. (3) For general relief and his costs. The defendant demurred to the complaint on the following grounds:

1. There is a misjoinder of causes of action in that the plaintiff has improperly united a cause of action for specific performance of an alleged contract by E. J. Hill to convey land, with a cause of action for damages for the breach of said alleged contract. 2. It appears from the complaint that there is a defect of parties plaintiff in that it is alleged that said sale was made to J. B. Winders and others, and the suit is brought by J. B. Winders alone. 3. It appears from the complaint that the alleged offer of June 6, 1905, was not based on a consideration, and that before its acceptance it was revoked by E. J. Hill in his telegram of August 29, 1905, to L. F. Hall. 4. The complaint fails to allege a proposal of sale to the plaintiffs and an acceptance of the same in the terms offered by the defendant, and particularly an offer to sell at $20,000 and an acceptance of the same. 5. It appears from the complaint that the contract is alleged to have been entered into by plaintiff with defendant, the latter acting through his agent, L. F. Hall, and it does not appear that, at the time the plaintiff dealt with L. F. Hall as agent of the defendant, the latter had the power or authority to act for the defendant. 6. That the alleged contract contains no sufficient description of the property to be conveyed, in that it is not sufficiently shown by it how and where the reservation of 100 acres in the immediate vicinity of the Boyette Mineral Springs is to be laid off to E. J. Hill.

7. That there has been no tender of the purchase money to E. J. Hill.

The court was of opinion and so held that the grounds of demurrer were untenable, except the third, fourth and fifth, and as to these, if it be held that Hall had no authority to sell on a credit, but was required to sell for cash, it appearing that I. F. Hill has a power of attorney from the defendant to sell the land, his dealings and transactions with the plaintiff constituted an adoption and ratification of the contract made by Hall. The demurrer was thereupon overruled. The defendants excepted and appealed.

*Geo. E. Butler* and *J. O. Carr* for the plaintiff.
*Stevens, Beasley & Weeks, Fuller & Fuller* and *E. J. Hill* for the defendants.

WALKER, J., after stating the case: The complaint contains so many evidentiary facts that we have experienced great difficulty in stating its substance, and at the same time preserving to the defendant the benefit of every fact which he is entitled to have considered in passing upon the demurrer, without the appearance of prolixity. The function of a complaint is not the narration of the evidence, but a statement of the substantive and constituent facts upon which the plaintiff's claim to relief is founded. The bare statement of the ultimate facts is all that is required, and they are always such as are directly put in issue. Probative facts are those which may be in controversy, but they are not issuable. Facts from which the ultimate and decisive facts may be inferred are but evidence and therefore probative. Those from which a legal conclusion may be drawn and upon which the right of action depends are the issuable facts which are proper to be stated in a pleading. The distinction is well marked in the following passage: "The ultimate facts are those which the evidence upon the trial will prove and not

the evidence which will be required to prove the existence of those facts." *Wooden v. Strew,* 10 How. Pr., 48; 4 Enc. of Pl. & Pr., p. 612.

The first ground of the demurrer is untenable. It is well settled that a cause of action for specific performance may be joined with one for damages resulting from a breach of the contract, or from a delayed performance, or for any other damages growing out of the transaction to which the plaintiff may show himself entitled. It is the object of the reformed procedure to administer full relief in one and the same action, and consequently if a complaint states facts constituting a cause of action for specific performance and also one for damages for a breach of the contract, a failure as to the first will not prevent a recovery on the second, whatever may be the form of the prayer for relief. Pomeroy Cont., sec. 480; *Sternberger v. McGovern,* 56 N. Y., 12. When the court finds for the plaintiff upon the general equity of the case, but declines in the exercise of its sound discretion to decree specific performance, or when the defendant is unable to comply with his contract, it may award damages, 20 Enc. Pl. & Pr., pp. 482, 488; or specific performance may be decreed, and, in addition, damages may be given for unjustifiable delay in doing what should have been promptly done. *Ibid.,* 490; Clark's Code, sec. 267, and notes; *Gregory v. Hobbs,* 93 N. C., 1; *Lumber Co. v. Wallace, ibid.,* 22. Much stress was laid upon this ground of demurrer in the argument, but it cannot be sustained. We do not mean to intimate that the plaintiff has suffered any damages, but only to decide that, if he has, they may be recovered in this action.

The next objection made by the demurrer, that the associates of J. B. Winders should have been made parties, was said by the plaintiff to be fully answered by the statute which provides that "a trustee of an express trust may sue without joining with him the person for whose benefit the action is

prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom or in whose name a contract is made for the benefit of another." Revisal, sec. 404. Under this section, when a person contracts in his own name, but really for the benefit of another, he is to be regarded as the trustee of an express trust whether the name of the beneficiary is disclosed or not. 15 Enc. Pl. and Pr., 724; 16 *ibid.,* 897; Bliss on Code Pleading (3 Ed.), sec. 55, *et seq.* The law requires that every action shall be prosecuted in the name of the real parties in interest, and the right to sue in the name of a trustee of an express trust is an exception to the general rule. Winders cannot be regarded as such a trustee because, here, the contract was made directly with the syndicate which was composed of Winders and his associates, and the case is the same as if it had been made with a firm composed of certain members. If the associates had been designated by their individual names, instead of by the pronoun, no doubt would be entertained upon the question, and we are unable to see why the failure to mention their names can make any difference in the application of the statute. It also appears that there were other parties, besides Winders, who were actually dealing with Hall, the agent, and it may be reasonably inferred that they were the associates. This ground of demurrer is sustained.

We are now brought to the consideration of the two principal questions in the case. The defendant's letter of June 6 which gave Hall the authority to sell does not fix any time for the payment of the purchase money, and the general principle is that when no time is specified in a contract for the performance of an act or the doing of a thing, the law implies that it may be done or performed within a reasonable time. *Michael v. Foil,* 100 N. C., 178; *Bunch v. Lumber Co.,* 134 N. C., 116; 2 Paige Cont., sec. 1154 That principle would apply in this case if there had been an option.

WINDERS *v.* HILL.

*Houghwout v. Boisaubin,* 18 N. J. Eq., 315; Clark Contracts, 596.  But we do not think the contract disclosed by the correspondence between the defendant and Hall amounted to an option.  Hall acted as agent for the sale of the property, and the contract with Winders and his associates is executed by him in that capacity.  It is apparent from the correspondence that the parties contemplated that Hall should sell and not buy.  This is made perfectly clear by reference to the defendant's letter to Hall, dated June 6, in which we find the following passages: "If you can handle my property so as to net me $20,000 you are at liberty to do so.  This offer is good for four months.  Of course, should you meet with some success in selling it about the end of the four months and wish an extension of time, I will give it to you.  In case you do not meet with encouragement from your prospective buyer, advise, as I have some parties wishing to buy the timber, if I cannot sell the land."  It is true that the defendant in that letter uses this expression: "This note should be used as an option to purchase"—but calling it an option did not necessarily make it so.  Its character as an option, or as an agency, must be determined by the law from the nature of the dealing between the parties and the language of the correspondence.  When the defendant said that the note should be regarded as giving an option, he meant no more nor less than that Hall should have the right to sell the property within four months.  But if we should look at it in another way, namely, that Hall should himself have the right to buy the land within four months and that, so far as this right is concerned, it should be treated as an option, and that he should also have the authority to sell within the same time, viewing the matter in a double aspect, we find that Hall did not avail himself of the option or profess to do so.  He acted and assumed to act throughout the transaction between him and the defendant not for himself, but as the defendant's agent engaged in the effort to sell the land to

third parties, and the dealing was finally consummated in this way. We are quite sure that the presiding judge must have considered the case as presenting a question of agency, for he decided it upon the ground of ratification. Hall sold the land to. Winders and others within the four months, or during the existence of the agency, and the defendant is bound by what he did, provided Hall acted in conformity to his authority, or, if he did not, provided further that the defendant has either waived his departure from the instructions or acquiesced in and ratified his acts.

The power to sell land does not of itself imply an authority to sell on credit. The presumption is that the sale is to be for cash. Mechem on Agency, secs. 325 and 353; 2 Paige Cont., sec. 963; *Brown v. Smith,* 67 N. C., 245; *Moye v. Cogdell,* 69 N. C., 93; *Burk v. Hubbard,* 69 Ala., 379; *School Dist. v. Ins. Co.,* 62 Me., 330; *Lumpkin v. Wilson,* 5 Heisk., 555. In *School Dist. v. Ins. Co., supra,* the court says: "It is needless to cite cases to establish the general principle that a specific authority or direction to sell does not authorize a sale on credit, unless, at the place of sale, there is an usage, general or special, in reference to which an authority to sell upon credit is supposed to be given." Assuming, therefore, that when Hall undertook by his own contract with Winders and his associates to sell on credit, that it is to extend the time of payment, so that the purchase money would be payable "by October 7, as may be agreed upon," and that in this respect he exceeded his authority, the question still remains, has the defendant ratified this unauthorized act?

In passing upon a demurrer to a pleading, we deem it proper to say as little about the merits of the case and to comment as little on the facts as possible, or as is consistent with a full statement of an opinion upon the question of law involved and necessary to be decided in order to dispose of the appeal. Should we go beyond this, there is danger that

something will be said which may necessarily prejudice one or the other of the parties in the future trial of the cause. We desire to refrain from giving utterance to anything that may have such an effect.

We therefore content ourselves with saying that we have carefully examined the facts alleged, and admitted by the demurrer and have concluded that there are some which should be submitted to the jury, upon the question of ratification, with proper instructions from the court as to what would, under the circumstances, constitute a ratification. *Brown v. Smith, supra.*

The ruling of the court as to parties is reversed, but in all other respects its rulings are sustained. The associates of J. B. Winders must be made parties to the action by order of the court below and all necessary process should be issued for that purpose.

Modified and Affirmed.